*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2013 UT 16**
**299 P.3d 1079**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

DENNIS MICHAEL GOGGIN,
*Petitioner and Appellant,*

*v.*

TAMMY RAE GOGGIN,
*Respondent and Appellee.*

No. 20110356
Filed March 15, 2013

Third District, Salt Lake
The Honorable Tyrone E. Medley
No. 054900409

Attorneys:

Rodney R. Parker, Frederick Mark Gedicks, Salt Lake City,

for appellant

Frederick N. Green, Sandy,
for appellee

CHIEF JUSTICE DURRANT authored the opinion of the Court, in
which ASSOCIATE CHIEF JUSTICE NEHRING, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

## INTRODUCTION

¶1     This case arises out of prolonged and complicated divorce
proceedings. Dennis Goggin (Dennis) and Tamara Goggin (Tammy)
separated in 2005, ending a marriage that had lasted approximately
ten years. The couple has spent nearly the same number of years
litigating their divorce. Throughout the process, Dennis has engaged
in a variety of contemptuous and obstructionist acts and has
repeatedly violated the court's discovery orders. With this behavior,
he successfully undermined the divorce court's ability to obtain a
complete and accurate assessment of the marital assets.

¶2     Ultimately, the divorce court awarded Tammy all of her
fees and costs related to appointing a receiver and hiring expert

forensic accountants. The court also awarded all of her attorney fees and out-of-pocket expenses. Further, the court awarded Tammy a disproportionate amount of the marital assets. Specifically, the court (A) credited to Tammy the full amount of the assets Dennis dissipated; (B) declined to award Dennis a credit or setoff for the value of separate property he contributed to the purchase and development of the marital residential property; and (C) declined to award him a credit or setoff for the value of managerial efforts he contributed to his businesses while the divorce was pending. Dennis appealed.

¶3    We conclude that the divorce court did not abuse its discretion[1] in awarding Tammy all of the fees and costs she incurred related to the receiver and the forensic accountants. But we conclude that the court exceeded its discretion to the extent that it awarded Tammy attorney fees and out-of-pocket costs in excess of the amount Dennis actually caused her to incur. Similarly, we conclude that the court exceeded its discretion to the extent that any portion of its award was based upon its finding that Dennis had entered into, and breached, an oral contract with Tammy regarding the business they started.

¶4    With respect to the divorce court's distribution of the marital property, we conclude that the court exceeded its discretion in awarding Tammy the full amount of dissipated assets without first estimating the maximum amount of assets that Dennis may have dissipated. Further, we conclude that the court erred in declining to consider whether Dennis was entitled to a credit or setoff for the separate property he contributed to the purchase and development of the marital residential property. Indeed, we conclude that the divorce court may have misunderstood the effect of the district court's prior ruling in this case. But because it properly applied the doctrine of unclean hands, we conclude that the court

---

[1] Appellate courts reviewing a district court's use of its discretionary authority commonly use the phrase "abuse of discretion" to describe acts that exceeded that authority. But we note that this phrase may sometimes suggest a more pejorative connotation than is intended. Accordingly, in this opinion, we employ a variety of similar phrases in our analysis, such as considering whether the court "overstepped the bounds of its discretion," "exceeded its discretion," or whether the act was "an appropriate exercise of its discretionary authority." For precedential purposes, however, we note that these phrases are synonymous with "abuse of discretion."

properly exercised its discretionary authority when it declined to award Dennis a setoff or credit for his managerial contributions to his businesses.

## BACKGROUND

¶5    Tammy and Dennis met in 1995 and married that year.[2] Both of them brought significant premarital assets into the relationship. Specifically, Tammy contributed a home she owned, and Dennis contributed corporate assets from Construction Industrial and Construct Tech, which were corporate entities he had created. At the time they married, Dennis also owned property in Sandy, Utah (Sundowner Property).

¶6    Shortly after they married, the couple began searching for property on which they could build a home and begin an equestrian business. They eventually purchased property in Riverton, Utah (Riverbend Property). Tammy served as the real estate broker, and the property was titled in the name of one of Dennis's corporate entities. The home was completed in 1999, and Tammy began operating their Riverbend Ranch equestrian business in 2002.

¶7    In 2005, Dennis filed for divorce. The divorce court entered a bifurcated decree of divorce, granting the divorce but reserving all other claims for trial. But as the case progressed, Dennis refused to cooperate with discovery and other court orders and "changed his testimony on numerous occasions" regarding ownership of the Riverbend and Sundowner Properties. Accordingly, before the divorce court was able to make equitable property distributions, Tammy was forced to bring a separate action (Collateral Action) in the district court (Collateral Court) to assert several claims regarding the Riverbend Property and the Sundowner Property.[3] Among other things, Tammy claimed that she and Dennis had entered into an oral contract to use and maintain the Riverbend Property for their joint

---

[2] We discussed the underlying facts of this case in greater detail in *Goggin v. Goggin (Goggin I)*, 2011 UT 76, ¶¶ 3–10, 267 P.3d 885.

[3] Specifically, the divorce court found that Dennis had delayed the divorce proceedings, and that "[b]ut for [Dennis's] representations, changing testimony, attempt to amend pleadings and his failure to be forthcoming as to the actual events as determined by [the Collateral Court] regarding the Riverbend Ranch Property this case should have and could have been resolved as originally planned in a trial that would have occurred sometime in 2006."

use and benefit, and that title to the Riverbend Property should be reformed.

*A. The Collateral Court's Order and Our* Goggin I *Opinion*

¶8      After a four-day trial, the Collateral Court issued an order (Collateral Order) in which it found that "Tammy and Dennis reached an express oral agreement to purchase, hold, and develop the [Riverbend P]roperty, and the equestrian business therein, for their mutual enjoyment and benefit," and that Dennis's breach of that agreement had caused Tammy to suffer damages. The court also found that the corporate entities in which the Riverbend Property was titled "have always been nothing more than Dennis'[s] 'alter egos,'" and that Dennis had used those corporate entities to engage in a number of "sham transactions" in which Dennis "shield[ed] his assets from potential creditors, including his former wives." Ultimately, the court concluded that the Riverbend Property "is part of the marital estate and will be subject to equitable distribution by the divorce court." Dennis appealed, and we reversed the Collateral Court's conclusion regarding the oral contract.[4] But we affirmed the Collateral Court's conclusion that the Riverbend Property was marital property, noting that "[i]t will be within the divorce court's sole discretion to determine the *extent* of [Tammy's equitable] claim in conducting its equitable distribution of the marital assets."[5]

*B. Dennis's Behavior*

¶9      After the Collateral Court issued the Collateral Order, but before we issued *Goggin I*, the parties appeared before the divorce court to resolve other remaining issues in the case. At this proceeding, the divorce court considered how to equitably divide the Riverbend Property in light of the Collateral Court's decision that it was marital property.[6] The divorce court also considered whether Dennis dissipated marital assets during the course of the divorce proceedings and how that dissipation should affect the property distribution.

¶10      But the majority of the divorce court's findings of fact and conclusions of law (Divorce Findings) was spent discussing the effect

---

[4] *Goggin I*, 2011 UT 76, ¶¶ 38, 43.

[5] *Id.* ¶ 41.

[6] "[T]o the extent that it [w]as applicable to the divorce case," the divorce court specifically applied the doctrine of res judicata to the findings and conclusions in the Collateral Court's Collateral Order.

of Dennis's previous and continuing obstructionist behavior before it and before the Domestic Relations Court Commissioner (Commissioner).[7] The court noted that Dennis had twice been found in contempt of court for his "egregious" behavior. Specifically, Dennis had failed to comply with the court's orders requiring him to (1) "render a full and complete accounting" of his funds; (2) refrain from transferring or disposing of business assets; and (3) "fully prosecute[] the business in good faith until the Receiver could take over." As a result, the court imposed sanctions—including sixty days of incarceration—and appointed a receiver.[8]

¶11 Dennis continued this pattern of behavior throughout the proceedings before the Collateral Court and the divorce court. For example, in a purported attempt to respond to Tammy's request for production of documents, Dennis indicated that the documents were "voluminous" and could be inspected at his counsel's office. Upon arrival, Tammy's counsel found that Dennis "had produced merely half a small banker's box containing account statements, most of which [Dennis] knew [Tammy] had already subpoenaed from third-party financial institutions." The court concluded that Dennis's production was not a substantive response to the majority of Tammy's requests. Tammy was forced to hire expert forensic accountants to recreate Dennis's cash flows.

¶12 Several months later, Tammy's forensic experts arrived at the Sundowner Property to inspect documents that Dennis had agreed to make available. But although the inspection was scheduled to take place during business hours, the experts found no one on the premises and its gates chained and locked. After Tammy filed another motion to compel—her fourth throughout the proceedings—Dennis agreed to let Tammy's forensic experts inspect the documents at the Sundowner Property. But upon arrival, they found that Dennis had not sorted any documents, indicated which document was responsive to which discovery request, or reviewed the documents to determine which were privileged. Thus, Tammy's experts were not permitted to take or segregate any of the documents they reviewed; instead, they were told to place stickers on the documents they wanted to copy. Further, "the documents that were

---

[7] Dennis's behavior is described at great length in the more than eighty pages of the Divorce Findings. We provide only a brief summary in this opinion.

[8] The court suspended Dennis's incarceration, however, to allow him time to purge his contempt.

made available included file cabinets full of documents, boxes of papers that appear[ed] to be simply drawers that had been emptied, and various piles of documents." Indeed, some of the documents that Dennis provided "were irrelevant and included things such as instructions on how to walk dogs or groom horses."

¶13   Accordingly, Tammy's experts were required to return for a second day of document inspection. Upon their return, they noticed that some of their stickers had been moved. Dennis also completely denied them access to five boxes, and refused to allow them to image any of his computers. And at the end of the inspection, Dennis refused to allow Tammy's experts to send in a copy service to copy the documents they had marked, stating that the documents had not yet been culled for privilege.

¶14   The divorce court concluded that Dennis "retained control of all the documents for one to two weeks before they were delivered to the copy service company," and that Tammy "has no way of knowing whether all documents her accounting experts marked were produced or whether [Dennis] removed, replaced, or otherwise intentionally withheld documents that were marked." As a result of Dennis's behavior during this one particular incident, Tammy incurred approximately $9,800 in copy costs, only to discover that more than half the documents were "irrelevant, duplicates, or trash."

¶15   But the divorce court noted that Dennis's "most egregious" discovery abuses likely concern his "stonewalling and alteration of requested computer evidence." As background, the divorce court noted that it had previously found Dennis to be in contempt for intentionally violating the Commissioner's order to put in escrow more than $200,000 in proceeds from the sale of Tammy's son's home (Ryan's House). As a sanction, the divorce court had ordered Dennis to "immediately provide" all records, including computer files, "that he possesses or maintains control over." Additionally, the court ordered that Dennis "immediately render a full and complete accounting of his receipt and use of all funds from whatever source or sort during the pendency of this action."

¶16    But in "utter contempt" of those orders, Dennis took his computers to the imaging company of his choice and instructed the imagers to not produce seventy-five files from the computers "that he alone categorized as 'privileged.'" Dennis also changed some of the names of the computer files. The divorce court concluded that the resulting disk that Dennis produced was "mostly useless" because "the information left on the disk was either irrelevant, not current, files could not be opened, and most importantly, the passage of time allowed for indeterminable data manipulation, spoilation and destruction." The court concluded that Dennis only ever attempted to produce data from two of his seven computers, and that he made this limited production only after he personally "filtered" the data and, without explanation, designated a significant portion of the contents as "privileged."

¶17    Although Dennis later submitted a variety of "cryptic," "incomprehensible," and unsupported documents, the divorce court concluded that Dennis made "no attempt whatsoever" to comply with the court's order to render a full accounting of his receipt and use of funds. Ultimately, the divorce court found that Dennis "made no effort to purge his contempt by complying with the conditions of the stay on his 60-day jail sentence," and found Dennis to be in contempt of court for a third time. The court noted that Dennis "had done virtually nothing as of the time of the Commissioner's Hearing to further this divorce action and has spent three years obstructing the Court's and parties' efforts to achieve equitable distribution of marital assets. It is clear that this behavior . . . is chronic and part of a pattern."

¶18    In addition to describing Dennis's contemptuous conduct, the divorce court explained that Dennis had failed to submit a certified accounting that it had required as a sanction for his previous behavior. Instead, the court noted that Tammy was forced to seek the data by issuing more than one-hundred subpoenas — which were not all successful — in order to obtain documents that Dennis should have provided in discovery. The court also found that Dennis was guilty of "pillaging" the corporate accounts in a "knowing, direct violation" of the court's financial restraining order.

*C. The Divorce Court's Marital Property Distribution and Awards*

¶19    Despite the difficulties caused by Dennis's behavior, the divorce court ultimately resolved the remaining issues in the case. Six of these issues are relevant to this appeal. First, the court awarded Tammy the fees and costs she incurred related to the appointment of a receiver, forensic experts, attorney fees, and out-of-

pocket costs. The court concluded that "[t]he necessity of a Receiver was due solely to [Dennis's] wrong doing and contemptuous behavior," and that hiring the expert forensic accountants was "necessitated by [Dennis's] behavior." Further, the court found that Tammy incurred her attorney fees "largely due to [Dennis's] untoward and contemptuous behavior," and awarded Tammy her out-of-pocket costs "for the same reasons set forth above."

¶20 Second, in its final calculations of the property distribution, the court appears to have awarded Tammy some amount for Dennis's breach of the oral contract regarding the operation of the Riverbend Property equestrian business.[9] The divorce court referenced this breach one time in its Divorce Findings, noting that "[t]he damages issue" before the divorce court "refers to, among other things, the damages due to [Dennis's] *breach of the parties' contract* and his failure to properly account for and administer income and funds attributable to marital assets." Later, in its corrected and supplemental findings and conclusions (Corrected Findings), the court listed, as one of ten reasons supporting the reasonableness of Tammy's attorney fees, that the "action was necessary to vindicate [Tammy's] rights under the *contract* that has been referenced throughout the case and throughout these Findings."

¶21 Third, after awarding Dennis some of the various setoffs and credits he requested, the court considered Dennis's claim that he was entitled to a share of the value of Ryan's House. After Ryan's House was sold, the court awarded Tammy the full value of the home and required Dennis to put into escrow the funds he received from the sale. But the court determined that Dennis had instead engaged in an "apparent intentional misrepresentation of the use of these funds." Specifically, the court found that Dennis "designed a scheme using cashier's checks to make it appear the funds were no longer available." The funds, however, "were returned to him from the payee or the cashier's checks themselves remained" under Dennis's custody or control. Accordingly, the court concluded that "the doctrine of unclean hands preclude[d]" Dennis's claim.

¶22 Fourth, the court considered whether to grant Dennis's request for a setoff or credit for labor and services performed on the Riverbend and Sundowner Properties after the divorce proceedings

---

[9] The divorce court issued its Divorce Findings before we issued *Goggin I*, in which we concluded that the agreement was unenforceable. *See Goggin I*, 2011 UT 76, ¶ 38.

had been initiated. After noting that it had not historically been the practice of either business to pay Dennis a salary, the court found that Dennis's "reprehensible conduct cannot be separated from the services [he] provided to both businesses that under normal circumstances would be entitled to recognition." Relying on the doctrine of unclean hands, the court denied his request.

¶23 Fifth, the court considered Dennis's claim that he was entitled to a setoff or credit for the funds he had used to purchase and construct the Riverbend Property. The court noted that "having adopted" the findings in the Collateral Order, the court "will not revisit the issue of the marital character or title of the Riverbend Ranch Property nor will this Court revisit the separate property of both parties that was put into" the property. The court also noted that it approached the equitable division of marital property "from the standpoint of an equal division, barring other circumstances as set forth and described herein." But the court ultimately denied Dennis a credit or setoff for his contributions to the Riverbend Property, noting that Dennis's "credibility as a witness is very poor and his testimony which is a key component of his claims for setoffs and credits is entitled to little, if any, weight." Accordingly, the divorce court determined that each party was entitled to one-half of the value of the Riverbend Property.

¶24 Finally, the court found, based on the accounting submitted by Tammy's experts, that Dennis had dissipated $932,042.41. The court determined that "it would be unjust and inequitable to award [Dennis] any amount of setoff or credit for these dissipated funds based on [Dennis's] deceitful, bad faith, contemptuous conduct and application of the unclean hands doctrine." The court found that Dennis had "taken a 'catch me if you can' approach to marital assets and once caught, claim[ed,] 'Oh, by the way, I still own one-half of what was dissipated[.]'" Further, the court noted that, because it had no way to determine whether Dennis had successfully hidden dissipated funds from Tammy's experts, it was impermissible to calculate prejudgment interest. And "[w]ithout prejudgment interest or some adjustment, [Tammy] is denied the benefit and use of the dissipated marital funds over time and bears the burden of the depreciating value of the amount owed over time."

¶25 After entering its Corrected Findings, the court issued an order based upon the Divorce Findings. Dennis appealed to the court of appeals, which then certified this case to us. We have jurisdiction pursuant to section 78A-3-102(3)(b) of the Utah Code.

**STANDARD OF REVIEW**

¶26 "The trial court in a divorce action is permitted considerable discretion in adjusting the financial and property interests of the parties, and its actions are entitled to a presumption of validity."[10] Accordingly, we will not disturb a district court's apportionment of marital property "unless it is clearly unjust or a clear abuse of discretion."[11] This is a "heavy burden," and "we can properly find abuse only if no reasonable person would take the view adopted by the trial court."[12] Further, we review a court's award of sanctions and its application of the unclean hands doctrine for abuse of discretion.[13]

**ANALYSIS**

¶27 Dennis appeals the divorce court's award of sanctions and fees to Tammy and its distribution of marital property. We first consider whether the court overstepped its discretion when it awarded Tammy the amounts she incurred related to the appointment of a receiver, hiring forensic accountants, attorney fees, and out-of-pocket costs. In this context, we consider whether any part of this award should be reversed because the court based its decision, in part, on Dennis's breach of contract. Second, we consider whether the court overstepped its discretion when, in its distribution of the marital property, it declined to credit Dennis for his share of Ryan's House or his contributions to the Sundowner and Riverbend Properties, and awarded Tammy the full amount of assets Dennis dissipated.

---

[10] *Burnham v. Burnham*, 716 P.2d 781, 782 (Utah 1986).

[11] *Gardner v. Gardner*, 748 P.2d 1076, 1078 (Utah 1988).

[12] *Goggin I*, 2011 UT 76, ¶ 26, 267 P.3d 885 (internal quotation marks omitted).

[13] *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957 (noting that we review a court's award of discovery sanctions for an abuse of discretion); *Chen v. Stewart*, 2005 UT 68, ¶ 44, 123 P.3d 416 (noting that we review a court's award of contempt sanctions for an abuse of discretion); *Parduhn v. Bennett*, 2005 UT 22, ¶ 42, 112 P.3d 495 (noting that we review a court's application of the unclean hands doctrine for an abuse of discretion); *Hughes v. Cafferty*, 2004 UT 22, ¶ 20, 89 P.3d 148 (noting that we review a court's equitable award of attorney fees for an abuse of discretion).

## I. IF ITS AWARD EXCEEDED THE ACTUAL INJURY DENNIS CAUSED OR WAS BASED UPON DENNIS'S BREACH OF CONTRACT, THE DIVORCE COURT OVERSTEPPED THE BOUNDS OF ITS DISCRETION WHEN IT AWARDED TAMMY ALL OF HER FEES AND COSTS

¶28    We conclude that the court did not exceed its discretion when it awarded Tammy the amounts she incurred related to the appointment of a receiver and the hiring of forensic accountants. As discussed below in Part A, the court's award of the fees related to the receiver was proper as a contempt sanction. Similarly, the court's award of the fees related to the forensic accountants was proper either as a contempt sanction or as a discovery sanction. But as discussed below in Part B, a portion of the remainder of the court's award may have exceeded the court's discretion. Specifically, to the extent that the court's award of attorney fees and out-of-pocket costs exceeds the fees and costs actually caused by Dennis's sanctionable behavior, and to the extent that any portion of the court's award is based upon the court's conclusion that Dennis breached an oral contract, we conclude that the divorce court overstepped the bounds of its discretion.

### A. The Court Overstepped Its Discretion Only to the Extent That It Awarded Tammy Fees and Costs in Excess of the Amount Dennis Actually Caused Her to Incur

¶29    The divorce court awarded Tammy various fees and costs associated with the divorce proceedings. Specifically, the court awarded Tammy fees and costs associated with the appointment of a receiver, fees for expert accountants, attorney fees, and out-of-pocket costs. The court found that Tammy had incurred attorney fees "largely due to [Dennis's] untoward and contemptuous behavior . . . in the contempt proceedings and in the collateral case to her direct damage," and awarded Tammy her fees. The court further noted that "these fees were necessary, reasonable, a proper sanction for [Dennis's] contempt, and required to protect [Tammy's] interests particularly in light of the litigation strategy, tactics and the overall behavior of [Dennis] in these proceedings and the collateral case." The court noted that Dennis prevailed on some of his claims, and that "usually there is an adjustment in attorney's fees and cost awards reflective of having prevailed in part on some of the claims." But because "this is far from the usual case in that [Dennis's] obstructive, deceptive conduct reasonably led to [Tammy] having to examine every transaction," the court found that "only a full and

complete award of attorney's fees and costs in [Tammy's] favor is equitable." Further, the court awarded Tammy her out-of-pocket costs "for the same reasons." The court found that the remainder of Tammy's incurred fees and costs—related to appointing a receiver and hiring expert forensic accountants—were "due solely to [Dennis's] wrong doing and contemptuous behavior," and awarded Tammy those fees as well.

¶30    Dennis argues that the court erred in granting this award because (1) "the statute governing fee and cost awards in divorce actions does not permit the awarding of attorney's fees . . . in the absence of the recipient's financial need"; (2) "the statute governing fee and cost awards in divorce actions does not permit the awarding of attorney's fees . . . as a contempt sanction"; and (3) *Goggin I* held that there was no enforceable contract.

¶31    We conclude that the court acted within its discretion when it awarded Tammy the fees and costs she incurred in connection with the receiver and the expert forensic accountants. These awards were proper as contempt sanctions. Further, we conclude that the award of fees related to the forensic accountants was proper as a sanction under rule 37 of the Utah Rules of Civil Procedure. But we conclude that the court exceeded its discretion if it awarded Tammy any attorney fees or costs beyond those that she incurred as a result of Dennis's contemptuous behavior.

¶32    In general, a prevailing party may not recover attorney fees unless such an award is authorized by statute or contract.[14] But four sources of authority permit a court to award attorney fees or other costs in a situation where one party has been uncooperative and failed to comply with discovery requests and court orders.[15] First, a

---

[14] *Hughes v. Cafferty*, 2004 UT 22, ¶ 21, 89 P.3d 148.

[15] Regardless of the parties' behavior, an award of attorney fees is also permissible in divorce actions under two circumstances. First, in an "action to *establish* an order of . . . division of property in a domestic case," the court may award fees to "enable the other party to prosecute or defend the action." UTAH CODE § 30-3-3(1) (emphasis added). An award under this section must be based on a finding of the party's financial need. *Kerr v. Kerr*, 610 P.2d 1380, 1384 (Utah 1980). Alternatively, in an "action to *enforce* an order of . . . division of property in a domestic case," the statute permits a court to award fees "upon determining that the party substantially prevailed upon

(continued...)

court may properly award to a party the fees the party incurred as a result of the opposing party's contemptuous behavior. Section 78B-6-311 of the Utah Code (Contempt Statute) provides that "[i]f an actual loss or injury to a party in an action or special proceeding is caused by the contempt, the court . . . may order the person proceeded against to pay the party aggrieved a sum of money sufficient to indemnify him and to satisfy his costs and expenses." We have held that this statute permits courts to award attorney fees in cases where one party's contemptuous behavior necessitated the proceedings—and thus necessitated the fees.[16]

¶33    Second, rule 37 of the Utah Rules of Civil Procedure provides that a court "may impose appropriate sanctions for the failure to follow its orders, including . . . order[ing] the party . . . to pay the reasonable expenses, including attorney fees, caused by the failure."[17] Accordingly, so long as "the district court has made a factual finding that the party's behavior merits sanctions," we will uphold a district court's award of discovery sanctions unless "abuse of discretion [is] *clearly* shown."[18] We have explained that "[o]ur

---

[15] (...continued) the claim or defense." UTAH CODE § 30-3-3(2) (emphasis added).

[16] *Bradshaw v. Kershaw*, 627 P.2d 528, 533 (Utah 1981) (upholding the court's award of attorney fees against a party who had been found to be in contempt, noting that the fees were incurred in an effort to enforce the court's orders, and concluding that "[t]he court's award of attorney's fees in this contempt case was justified . . . under the 'costs and expenses' provision" of the Contempt Statute); *Davidson v. Munsey*, 80 P. 743, 744 (Utah 1905) (holding that the Contempt Statute was "intended" to permit the court to award the "unavoidable expenditures" that an aggrieved party incurred in attempting to "secure the benefits" of the proceedings); *see also Beardall v. Beardall*, 629 P.2d 425, 427 (Utah 1981); *Tribe v. Tribe*, 202 P. 213, 216 (Utah 1921) (upholding an award of attorney fees when the fees were incurred in an attempt to force the opposing party to comply with the court's orders).

[17] UTAH R. CIV. P. 37(e)(2)(E).

[18] *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 23, 199 P.3d 957 (alteration in original) (internal quotation marks omitted).

deferential review recognizes that trial courts must deal first hand with the parties and the discovery process."[19]

¶34 Third, a court may award equitable attorney fees. "[A] court has inherent equitable power to award reasonable attorney fees when it deems it appropriate in the interest of justice and equity. . . . Indeed, the power to award such fees is part of the original authority of the chancellor to do equity in a particular situation."[20] And we have recognized that "[c]ourts have exercised that inherent power in several categories of cases," including situations where "a party acts in bad faith, vexatiously, wantonly, or for oppressive reasons."[21] A court making an equitable award of attorney fees "must ascertain whether the equities of a given case justify the use of its inherent and discretionary power to award fees."[22]

¶35 Finally, a court may be able to award attorney fees as a sanction under its inherent sanction powers. It is well established that courts have inherent powers to sanction attorneys.[23] And although we have never held that courts possess a similar inherent power to sanction parties, we have suggested that such a power may exist. Specifically, in upholding a court's award of attorney fees as a sanction for an *attorney's* bad behavior, we noted that "such awards are within the inherent powers of the court and are in fact imposed regularly as a means of controlling the conduct of attorneys *and litigants*."[24] Additionally, the Utah Court of Appeals has expressly held that, under the court's inherent sanction power,

---

[19] *Id.* (internal quotation marks omitted).

[20] *Stewart v. Utah Pub. Serv. Comm'n*, 885 P.2d 759, 782 (Utah 1994) (internal quotation marks omitted).

[21] *Id.* (internal quotation marks omitted).

[22] *Hughes*, 2004 UT 22, ¶ 20.

[23] *Griffith v. Griffith*, 1999 UT 78, ¶ 13, 985 P.2d 255 ("It is undoubtedly true that courts . . . possess certain inherent powers not derived from any statute. Among these are the power to punish for contempt . . . ." (internal quotation marks omitted)).

[24] *Barnard v. Wassermann*, 855 P.2d 243, 249 (Utah 1993) (emphasis added).

courts may properly award attorney fees that were caused by the opposing *party's* misbehavior.[25]

¶36 Thus, a court's authority to impose an award of fees as a sanction against a party who has been obstructive or contemptuous is derived from several statutes and common law doctrines. But none of those statutes or doctrines permit the amount of the award to exceed the amount of fees, costs, or injury that the other party actually incurred. Specifically, the amount of fees and costs awarded under the Contempt Statute cannot exceed the amount of "actual loss or injury" suffered by the other party.[26] And sanctions imposed under rule 37 of the Utah Rules of Civil Procedure are limited to the amount of fees and expenses "caused by the failure" to follow the court's orders.[27] Similarly, a court's award of equitable attorney fees, by its nature, is limited to the amount of fees incurred by the other party.[28] Finally, the amount of fees and costs awarded under the

---

[25] *Liston v. Liston*, 2011 UT App 433, ¶¶ 26–27, 269 P.3d 169 (reviewing the district court's decision to use its "inherent power to sanction" to "award[] Wife [$5,000] of her attorney fees based on the issue of fault, primarily [Husband]'s ongoing and blatant attempts to hide assets, confuse financial transactions, and otherwise avoid being accountable for his Court Ordered and marital obligations," and confirming the award, concluding that it was proper "[g]iven the trial court's findings and Husband's failure to challenge the trial court's inherent power to award attorney fees as a sanction" (third alteration in original) (internal quotation marks omitted)); *Anderson v. Anderson*, 2010 UT App 392U, para. 5 (upholding an award of attorney fees "because Wife's unpreparedness and failure to seek a continuance prior to [a] hearing caused the other parties to appear unnecessarily," and concluding that "[s]uch awards fall within the district court's inherent powers").

[26] UTAH CODE § 78B-6-311 (providing that "[i]f an actual loss or injury to a party in an action or special proceeding is caused by the contempt, the court . . . may order the person proceeded against to pay the party aggrieved a sum of money sufficient to indemnify him and to satisfy his costs and expenses").

[27] UTAH R. CIV. P. 37(e)(2)(E); *see also Morton v. Cont'l Baking Co.*, 938 P.2d 271, 274 (Utah 1997) (noting that sanctions under rule 37 are inappropriate if they are not supported by an "evidentiary basis" (internal quotation marks omitted)).

[28] *See Stewart*, 885 P.2d at 782 ("[A] court has inherent equitable

(continued...)

court's inherent sanction power is designed to compensate the other party for the expense resulting from the sanctionable behavior and must be "related to the nature of the misconduct and the resulting prejudice."[29] Accordingly, when a court imposes an award of fees or costs as a sanction, its award must be limited to the amount actually incurred by the other party.

¶37    In the divorce proceedings in this case, the divorce court awarded Tammy fees associated with appointing a receiver, finding that she incurred those fees "due solely to [Dennis's] wrong doing and contemptuous behavior." Similarly, the court awarded Tammy fees associated with hiring expert forensic accountants, finding that those fees were "necessitated by [Dennis's] behavior referred to herein and [in] the contempt and collateral proceedings." Because these awards compensated Tammy for the "actual loss or injury" that Dennis caused, they were proper under the Contempt Statute.[30] Further, Tammy was forced to hire forensic accountants as a direct result of Dennis's failure to comply with discovery requests—and ultimately with court orders—requiring him to submit an accounting. Thus, the court's award of the forensic accountant fees is also proper under rule 37 of the Utah Rules of Civil Procedure.[31] Accordingly, we conclude that the court did not overstep the bounds of its discretion when it awarded Tammy her fees and costs associated with the receiver and the forensic accountants.

¶38    But the divorce court awarded Tammy her attorney fees and out-of-pocket costs after finding that she incurred those fees "*largely* due to [Dennis's] untoward and contemptuous behavior." (Emphasis added.)[32] Although it is unclear, this language implies that Tammy may have been awarded at least some attorney fees and out-of-pocket costs that were *not* caused by Dennis's contemptuous

---

[28] (...continued)
power to award reasonable attorney fees when it deems it appropriate in the interest of justice and equity.").

[29] *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 94, 289 P.3d 369; *see also Griffith*, 1999 UT 78, ¶ 14; *Barnard*, 855 P.2d at 248–49.

[30] *See* UTAH CODE § 78B-6-311.

[31] UTAH R. CIV. P. 37(e)(2)(E).

[32] We note that although the court's reasoning for awarding the out-of-pocket costs is somewhat unclear, it appears that the court awarded them "for the same reasons as set forth" in the discussion of the attorney fees award.

behavior. In other words, the court's award of attorney fees and out-of-pocket costs may have exceeded the amount of injury Dennis caused. And as discussed above, the court lacks authority to impose, as a sanction, an award of fees and costs in excess of the actual injury caused to the other party. Accordingly, to the extent the court awarded Tammy fees and costs in excess of the actual injury Dennis caused, we conclude that the court exceeded its discretion. We therefore remand this issue to the divorce court with instructions to identify and excise any portion of its award of attorney fees and out-of-pocket costs that exceeds the amount actually caused by Dennis's sanctionable behavior.

### B. The Court Overstepped Its Discretion to the Extent It Awarded Tammy Any Amount Based Upon Dennis's Breach of Contract

¶39    As explained above, in the Collateral Action, the Collateral Court found that Tammy and Dennis had created an oral contract to "purchase, hold, and develop the [Riverbend Property], and the equestrian business therein, for their mutual enjoyment and benefit," and that Dennis's breach of that agreement had caused Tammy to suffer damages. But in *Goggin I*, which we issued after the divorce court entered its Divorce Findings and Corrected Findings, we concluded that no enforceable contract existed, and we reversed that portion of the Collateral Court's Collateral Order.[33]

¶40    In the divorce proceedings in this case, when the divorce court calculated its award to Tammy, it appears to have taken into account Dennis's breach of that contract. Specifically, the divorce court noted that "[t]he damages issue" before the divorce court "refers to, among other things, the damages due to [Dennis's] breach of the parties' contract and his failure to properly account for and administer income and funds attributable to marital assets." And later, in its Corrected Findings, the court listed, as one of ten reasons supporting the reasonableness of Tammy's attorney fees, that the "action was necessary to vindicate [Tammy's] rights under the contract that has been referenced throughout the case and through-out these Findings."

¶41    Thus, although the court did not specify an amount of damages caused by Dennis's breach of contract, it appears that some portion of the total award of Tammy's fees and costs may have been based upon that breach. But in light of our conclusion in *Goggin I*, it

---

[33] *Goggin I*, 2011 UT 76, ¶ 38, 267 P.3d 885.

is clear that any such award would be improper. We therefore conclude that, to the extent the court's award was based upon Dennis's breach, the court exceeded the bounds of its discretion. Accordingly, we remand this issue to the divorce court with instructions to identify and excise any amount of its award to Tammy that was based upon Dennis's breach of contract.[34]

## II. THE DIVORCE COURT OVERSTEPPED THE BOUNDS OF ITS DISCRETION IN FAILING TO ESTIMATE THE MAXIMUM AMOUNT OF ASSETS THAT DENNIS MAY HAVE DISSIPATED AND IN FAILING TO CONSIDER WHETHER HE WAS ENTITLED TO A SETOFF OR CREDIT FOR THE SEPARATE PROPERTY HE CONTRIBUTED TO THE RIVERBEND PROPERTY

¶42 In making its marital property distribution, the divorce court considered several setoffs and credits to which Dennis claimed he was entitled. The court granted two of them, crediting Dennis with a one-half share of the value of a horse and a one-half share of the value of a horse trailer. But Dennis argues that the divorce court overstepped its discretion when it declined to award him any other credits or setoffs, arguing that "it is legally erroneous for a court to use contempt sanctions as a basis for dividing the marital estate."

¶43 First, Dennis argues that the court exceeded its discretion in crediting Tammy with the full amount of the assets he dissipated.[35] Second, he claims that the court erred when it failed to

---

[34] As discussed above, Tammy's award consisted of the sum of fees and costs related to the appointment of a receiver, hiring expert forensic accountants, attorney fees, and out-of-pocket costs. Accordingly, we note that it is entirely possible that the court did not award any additional amount to Tammy based upon Dennis's breach. In that case, on remand, the court should clarify that no portion of the award was based upon the breach.

[35] In the "summary of arguments" section of his brief, Dennis suggests that the court also exceeded its discretion in crediting Tammy with the full amount of Ryan's House. Specifically, after summarizing his argument related to the dissipated assets, Dennis asserts that "[t]he court made the same error regarding the $203,421 proceeds from the sale of Ryan's [H]ouse." But the remainder of Dennis's brief contains no argument or discussion related to Ryan's House. Indeed, he mentions Ryan's House only two additional

(continued...)

credit him with the amounts he contributed to the purchase of the Riverbend Property and the construction of the home on that property. And third, he argues that the court exceeded its discretion in declining to credit him for the labor and services he performed for the Riverbend and Sundowner businesses while the divorce was pending.

¶44    "The trial court in a divorce action is permitted considerable discretion in adjusting the financial and property interests of the parties, and its actions are entitled to a presumption of validity."[36] Thus, we will not disturb a court's distribution of marital property "unless it is clearly unjust or a clear abuse of discretion."[37] Accordingly, a party who appeals from a marital property division has the burden to prove that either (1) "there was a misunderstanding or misapplication of the law resulting in substantial and prejudicial error"; (2) "the evidence clearly preponderated against the finding";

---

[35] (...continued)
times: once in a table purporting to show how the divorce court distributed the marital property and once in a table showing how Dennis believes the divorce court should have distributed the property. Instead, Dennis's argument regarding Ryan's House first appears in the final ten lines of his reply brief. Unsurprisingly, Tammy did not respond to this issue in her brief.

Rule 24(a)(9) of the Utah Rules of Appellate Procedure requires that a brief's "argument shall contain the contentions and reasons of the appellant with respect to the issues presented." Indeed, "[t]o satisfy rule 24(a)(9), the argument must provide meaningful legal analysis." *Wilson v. IHC Hosps., Inc.*, 2012 UT 43, ¶ 121, 289 P.3d. 369 (internal quotation marks omitted). "Under this rule, a party's argument may be disregarded if it offers little more than a disjointed array of facts . . . coupled with conclusory statement[s] unsupported by analysis or authority." *Neff v. Neff*, 2011 UT 6, ¶ 65, 247 P.3d 380 (alteration in original) (internal quotation marks omitted). Moreover, the content of reply briefs is "limited to answering any new matter set forth in the opposing brief." UTAH R. APP. P. 24(c). "And we may refuse, sua sponte, to consider inadequately briefed issues." *State v. Lee*, 2006 UT 5, ¶ 22, 128 P.3d 1179.

Because Dennis provided no argument in his opening brief to show that the divorce court erred in awarding the proceeds of Ryan's House to Tammy, we decline to consider this issue.

[36] *Argyle v. Argyle*, 688 P.2d 468, 470 (Utah 1984).

[37] *Gardner v. Gardner*, 748 P.2d 1076, 1078 (Utah 1988).

or (3) "such a serious inequity has resulted as to manifest a clear abuse of discretion."[38] This is a "heavy burden," and "we can properly find abuse only if no reasonable person would take the view adopted by the trial court."[39] We consider each of Dennis's claims below.

### A. The Court Overstepped Its Discretion When It Awarded Tammy the Full Amount of the Dissipated Assets

¶45 The divorce court found that Dennis had dissipated the assets of the Riverbend Property and the Sundowner Property "in an inappropriate, untoward, self-serving manner . . . and in direct contravention of the Court's multiple Orders." But the court declined to award Dennis any amount of setoff or credit for his share of the funds he dissipated. Specifically, after noting that "generally each party is presumed entitled to all of his or her separate property and fifty percent of marital property," the court awarded Tammy the *entire* dissipated amount, finding that "it would be unjust and inequitable to award [Dennis] any amount of setoff or credit for these dissipated funds based upon [his] deceitful, bad faith, contemptuous conduct and application of the unclean hands doctrine." Further, the court noted that, because it had no way to determine whether Dennis had successfully hidden dissipated funds from Tammy's experts, it was impermissible to calculate prejudgment interest. And "[w]ithout prejudgment interest or some adjustment, [Tammy] is denied the benefit and use of the dissipated marital funds over time and bears the burden of the depreciating value of the amount owed over time."

¶46 Dennis argues that the court exceeded its discretion in failing to "award" the dissipated funds equally to Dennis and Tammy. In other words, Dennis argues that although he dissipated marital funds, half of those funds were his, and accordingly, he should only be accountable to Tammy for her share. We agree.

¶47 Section 30-3-5(1) of the Utah Code permits courts to issue "equitable orders" relating to marital property in divorce cases. In making its equitable distribution of property, the court should generally consider a variety of factors, including "whether the property was acquired before or during the marriage; the source of

---

[38] *Burnham v. Burnham*, 716 P.2d 781, 782–83 (Utah 1986) (internal quotation marks omitted).

[39] *Goggin I*, 2011 UT 76, ¶ 26, 267 P.3d 885 (internal quotation marks omitted).

the property; . . . the parties' standard of living;" and their "respective financial conditions."[40] Generally, "[e]ach party is presumed to be entitled to all of his or her separate property and fifty percent of the marital property."[41] And "in appropriate circumstances[,] equity requires that each party recover the separate property brought into or received during the marriage."[42]

¶48 But the court is "not expected to view each item of marital property in isolation and divide each separately."[43] Instead, the court "is permitted to look at the marital property in its entirety and to apportion it in a manner that best facilitates 'a clean break' between the parties and achieves a result that equitably divides the marital property as a whole."[44] The appropriate distribution of property "var[ies] from case to case," and "[t]he overriding consideration is that the ultimate division be equitable—that property be fairly divided between the parties, given their contributions during the marriage and their circumstances at the time of the divorce."[45] The court should also "consider whether there are exceptional circumstances that overcome the general presumption that marital property [should] be divided equally between the parties."[46] Indeed, the court

---

[40] *Burke v. Burke*, 733 P.2d 133, 135 (Utah 1987).

[41] *Hall v. Hall*, 858 P.2d 1018, 1022 (Utah Ct. App. 1993) (internal quotation marks omitted).

[42] *Burke*, 733 P.2d at 135; *see also Preston v. Preston*, 646 P.2d 705, 706 (Utah 1982) (holding that the husband was entitled to a credit for costs he paid for the construction of the marital home, because "the evidence was uncontradicted that [the amount] came from the husband's sale of assets he owned prior to the marriage, and only the balance from his earnings during the marriage").

[43] *Boyer v. Boyer*, 2011 UT App 141, ¶ 10, 259 P.3d 1063.

[44] *Id.*

[45] *Newmeyer v. Newmeyer,* 745 P.2d 1276, 1277–78 (Utah 1987); *see also Burnham*, 716 P.2d at 782 ("The problem is of such a nature as not to be susceptible of solution by any exact formula; indeed the authorities frequently say that for that reason each case must be determined upon its own facts." (internal quotation marks omitted)).

[46] *Boyer*, 2011 UT App 141, ¶ 10 (alteration in original) (internal quotation marks omitted). The court may not consider "marital misconduct" in making the property division, however. *Jesperson v. Jesperson*, 610 P.2d 326, 328 (Utah 1980); *Read v. Read*, 594 P.2d 871,

(continued...)

"is vested with plenary power to distribute marital property according to the demands of justice."[47]

¶49    Further, "the marital estate is [generally] valued at the time of the divorce decree or trial."[48] But "where one party has dissipated an asset, hidden its value or otherwise acted obstructively, the trial court may, in the exercise of its equitable powers, value a marital asset at some time other than the time the decree is entered, such as at separation,"[49] "or may otherwise hold one party accountable to the other for the dissipation of marital assets."[50] Thus, when a court finds that a spouse has dissipated marital assets, the court should calculate the value of the marital property as though the assets remained.[51] As a result, when the court conducts its equitable distribution of the marital property, the other spouse should receive a credit for his or her share of the assets that were dissipated.[52]

¶50    In this case, the divorce court faced a difficult situation. To ensure that Tammy received her fair share of the marital estate, the court was charged with determining the amount of assets that Dennis had dissipated. But the court was aware that Dennis had acted obstructively and hidden at least some of the assets that he had dissipated. And because Dennis consistently refused to respond to discovery requests and comply with the court's orders to provide an accounting, the court was forced to determine the value of the dissipated assets solely with information provided by Tammy's experts. To make matters worse, neither Tammy's experts nor the court had any way to determine whether the accounting they pieced together was complete, or whether Dennis had been successful in his efforts to completely hide certain assets or transactions.

---

[46] (...continued) 872 (Utah 1979) (stating that "the purpose of [a property] settlement should not be to impose punishment upon either party").

[47] *Jackson v. Jackson*, 617 P.2d 338, 340 (Utah 1980).

[48] *Jacobsen v. Jacobsen*, 2011 UT App 161, ¶ 39, 257 P.3d 478 (internal quotation marks omitted).

[49] *Parker v. Parker*, 2000 UT App 30, ¶ 13, 996 P.2d 565 (internal quotation marks omitted).

[50] *Thomas v. Thomas*, 1999 UT App 239, ¶ 19, 987 P.2d 603.

[51] *See Parker*, 2000 UT App 30, ¶ 13.

[52] *See id.* ¶ 15.

¶51 Ultimately, the court declined to credit Dennis with any share of the dissipated assets "based upon [his] deceitful, bad faith, contemptuous conduct and application of the unclean hands doctrine." Thus, it seems that the court awarded Tammy the full amount of dissipated assets as a contempt sanction against Dennis.

¶52 But there is no place for contempt sanctions in an equitable distribution of marital property. Under the Contempt Statute, a court may order a party to pay for the "actual loss or injury" he caused.[53] And although a court has considerable discretion in determining whether to sanction a party, it does not have discretion to impose a sanction beyond the actual injury caused by the contemptuous behavior.[54] Moreover, it does not have discretion to distribute marital property in a way that is designed to punish a party's contemptuous behavior.

¶53 As discussed above, when considering how to equitably distribute dissipated marital assets, a court must begin by determining the amount of dissipated assets. A court is not relieved of this duty simply because a spouse engages in contemptuous behavior or fails to comply with discovery orders. Instead, we conclude that when a spouse's behavior prevents the court from determining the precise amount of dissipated assets, the court should estimate, to the best of its ability, the upper limit of the amount of assets that the spouse may have dissipated. The court should then use this amount to value the marital estate and distribute the marital property. This approach ensures that the court can distribute the marital property equitably and without rewarding obstructionist or contemptuous behavior.

¶54 Thus, we conclude that the divorce court exceeded its discretion when it declined to award Dennis any amount of setoff or credit for his share of the assets he dissipated. Accordingly, we remand this issue for further proceedings consistent with this opinion.

---

[53] UTAH CODE § 78B-6-311.

[54] *See supra* ¶ 36.

*B. The Court Overstepped Its Discretion When It Failed to Consider Whether Dennis Was Entitled to a Setoff or Credit for the Separate Property He Contributed to the Riverbend Property*

¶55    Dennis argues that the court erred in failing to consider whether he was entitled to a setoff or credit for the separate property he contributed to the purchase and development of the Riverbend Property. We agree.

¶56    In its Collateral Order, the Collateral Court found that the Riverbend Property was marital property, "subject to equitable distribution by the divorce court."[55] But applying the doctrine of res judicata to the Collateral Order, the divorce court stated that, "having adopted" the Collateral Order, it "w[ould] not revisit the issue of the marital character or title of the [Riverbend Property] nor w[ould it] revisit the separate property of both parties that was put into" the property. Thus, with respect to Dennis's claim that he was entitled to credits for the amounts he contributed to purchase and develop the Riverbend Property, the court seems to have determined that the issue had already been settled. Accordingly, the divorce court awarded each party one-half of the value of the Riverbend Property.

¶57    But it appears that the divorce court misunderstood the effect of the Collateral Order. At issue in the Collateral Action was whether the Riverbend Property was part of the marital estate even though it was titled in the name of one of Dennis's corporate entities. Thus, the Collateral Court's determination that the property was marital permitted Tammy to claim a portion of it. But the Collateral Court did not purport to decide the extent of either party's claim. Instead, the Collateral Court explicitly reserved that task for the divorce court. In other words, the Collateral Court determined that the Riverbend Property was marital property subject to equitable distribution, but it did not determine the amount to which each party was entitled.

¶58    The divorce court was correct to accept the Collateral Court's determination that the Riverbend Property was marital property. But the divorce court erred in assuming that the marital nature of the property necessarily required it to divide the property

---

[55] We ultimately affirmed this finding in *Goggin I*, noting that "[i]t will be within the divorce court's sole discretion to determine the *extent* of [Tammy's] claim in conducting its equitable distribution of the marital assets." 2011 UT 76, ¶ 41.

equally. As discussed above, *generally*, each party to a divorce is entitled to half of the marital property.[56] But "in appropriate circumstances[,] equity requires that each party recover the separate property brought into or received during the marriage."[57] So although the Riverbend Property was marital property, the divorce court should have considered whether Dennis was entitled to a credit or setoff for the separate property he contributed to it. Accordingly, we conclude that the divorce court erred in declining to consider whether Dennis is entitled to a setoff or credit for his financial contributions to the Riverbend Property, and we remand with instructions for the divorce court to make this determination.

*C. The Court Did Not Overstep Its Discretion When It Declined*
*to Award Dennis a Setoff or Credit for His Managerial Contributions*
*to the Riverbend or Sundowner Properties*

¶59   Before the Collateral Court, Dennis sought a "setoff or credit for labor and services performed" on the Riverbend and Sundowner Properties while the divorce was pending. Specifically, Dennis sought a salary for the managerial efforts he contributed to the businesses, and rent for the businesses' "occupation of Dennis's separate property." But citing both his contemptuous behavior and the doctrine of unclean hands, the court denied Dennis's claim. The court noted that it was not the historical business practice for Dennis to receive a salary or rent, and that "to award such a claim would reward [Dennis] for much of the reprehensible conduct [he] engaged in . . . which would be unjust and inequitable." Specifically, the court found that Dennis's "reprehensible conduct cannot be separated from the services provided to both businesses that under normal circumstances would be entitled to recognition." We agree.

¶60   The doctrine of unclean hands expresses the principle that "a party [who] comes into equity for relief . . . must show that his . . . conduct has been fair, equitable, and honest as to the particular controversy in issue."[58] In other words, a party will not be permitted to take advantage of his own wrongdoing or claim the benefit of his own fraud.[59] We have "long recognized" this doctrine, noting that

---

[56] *See supra* ¶ 48.

[57] *Burke*, 733 P.2d at 135.

[58] 27A Am. Jur. 2d *Equity* § 98 (2012).

[59] *Id.*

"he who seeks equity must do equity."[60] Similarly, we have held that "[i]t is inherent in the nature and purpose of equity that it will grant relief only when fairness and good conscience so demand," and that "equity does not reward one who has engaged in fraud or deceit in the business under consideration, but reserves its rewards for those who are themselves acting in fairness and good conscience, or as is sometimes said, to those who have come into court with clean hands."[61]

¶61   In this case, Dennis's request for salary and rent was a request for equitable relief. And it is well established that Dennis did not come to court with "clean hands." The court was well within its discretion to apply the doctrine of unclean hands and deny Dennis the equitable relief he sought. Accordingly, we conclude that the court acted within its discretion when it declined to award Dennis any credit for his services.

## CONCLUSION

¶62   For the foregoing reasons, we conclude that the divorce court properly exercised its discretion in awarding Tammy all of the fees and costs she incurred related to the receiver and the forensic accountants. But we conclude that the court overstepped its discretion if any part of its award of attorney fees and out-of-pocket costs exceeds the amount Dennis caused Tammy to incur. Similarly, we conclude that the court overstepped its discretion if any part of its award was based upon Dennis's breach of contract.

¶63   Further, we conclude that the court overstepped its discretion when it awarded Tammy the full amount of dissipated assets. Next, because it misapplied the Collateral Order, we conclude that the court erred in declining to consider whether to credit Dennis for the separate property he contributed to the Riverbend Property. Finally, however, we conclude that the court acted within its discretion when it declined to credit Dennis for the managerial services he provided to the Riverbend and Sundowner Properties

---

[60] *Hill v. Estate of Allred*, 2009 UT 28, ¶ 22, 216 P.3d 929 (internal quotation marks omitted).

[61] *Jacobson v. Jacobson*, 557 P.2d 156, 158 (Utah 1976). Citing the doctrine, we have, for example, refused to consider a party's equitable arguments when that party "instigated and advanced the litigation in violation" of his contract and "demand[ed] sums in excess" of an agreed-upon fee. *Pledger v. Gillespie*, 1999 UT 54, ¶ 21, 982 P.2d 572.

while the divorce was pending. For the foregoing reasons, we remand this case to the divorce court for further proceedings consistent with this opinion.

_____