2011 UT 76

### Tamara Rae GOGGIN, Plaintiff and Appellee,

v.

### Dennis Michael GOGGIN aka Dennis M. Goggin; Rosalie J. Hendrickson, as Trustee of West One Trust of Edward C. and Rosalie J. Hendrickson; Rosalie J. Hendrickson, individually and as Trustee of the Living Trust of Ed Hendrickson dba Construction Industrial and dba Construction and Industrial; Construction Tech Corporation, Defendants and Appellants.

Nos. 20090294, 20090329.

Supreme Court of Utah.

Dec. 16, 2011.

R. Steven Chambers, Gary A. Weston, Salt Lake City, for plaintiff.

Dennis Michael Goggin, pro se.

Rodney R. Parker, Richard A. Van Wagoner, R. Scott Young, Frederick Mark Gedicks, Salt Lake City, for defendants.

Chief Justice DURHAM, opinion of the court:

## INTRODUCTION

¶ 1 Dennis and Tamara (Tammy) Goggin separated and divorced in 2005, but are still litigating aspects of their divorce. During the pendency of the divorce proceedings, Tammy brought a separate civil suit seeking various forms of equitable relief and monetary damages, which the district court granted. Several parties to that lawsuit, including Dennis, appeal the district court's decision. We conclude that some of the parties filed untimely notices of appeal, and accordingly we do not consider their claims.

¶ 2 In Dennis's appeal, which was timely filed, he argues that the district court improperly imposed a constructive trust on certain property, erroneously found that an express oral agreement existed between Tammy and Dennis, and lacked authority to declare property part of the marital estate. We conclude that the district court did not err in imposing a constructive trust and declaring property part of the marital estate, but did err in its determination that an enforceable agreement existed. We therefore affirm in part and reverse in part.

## BACKGROUND

¶ 3 Tammy and Dennis met in March 1995 and were married in July that same year. Their marriage lasted approximately ten years: they separated in January 2005 and a bifurcated decree of divorce was entered in December 2005.

¶ 4 Dennis was a construction contractor prior to his marriage to Tammy. In 1986, he started an entity called Construct Tech, although it was not incorporated until 1988. At the time of incorporation, Dennis held a 60 percent interest in the company; by 1991, he had become its sole shareholder and director. Construct Tech thrived for several years, until the city of Coeur d'Alene, Idaho, defaulted on a multi-million dollar contract. That default led to a lawsuit against the city in 1993, in which Construct Tech and Dennis were the two named plaintiffs. The lawsuit resulted in a jury award in favor of Construct Tech, pursuant to which the company ultimately received approximately $2.4 million.

¶ 5 In 1992, Dennis created another entity called Construction Industrial as a partnership between him, his mother Rosalie Hendrickson, and his stepfather Ed Hendrickson. This partnership existed primarily to serve the needs of Construct Tech, although it maintained a separate bank account (of which Dennis was the account manager).

¶ 6 Both Dennis and Tammy brought significant premarital assets into the relationship. Tammy brought in a home she owned in Draper, Utah. Dennis, through his connections with Construct Tech and Construction Industrial, brought in the corporate assets, which included the significant proceeds from the Coeur d'Alene lawsuit.

¶ 7 When Dennis and Tammy married in 1995, they were living together in Tammy's Draper home. Shortly after marrying, however, they began searching for a new property on which they could build a home as well as establish and operate an equestrian business. They eventually settled on a twenty-five acre property in Riverton, Utah (the Riverbend Property). Tammy served as the real estate broker and agent for the purchase. In that role, she prepared a Real Estate Purchase Contract, which—by both parties' agreement—listed Dennis as the sole buyer. The Riverbend Property was titled, however, in Construct Tech's name. Tammy initially expressed some reservations about this arrangement, but agreed to it after Dennis explained that "it would be advantageous." The warranty deed for the Riverbend Property similarly listed Construct Tech as the grantee. Despite these arrangements, Dennis has repeatedly claimed personal ownership of the Riverbend Property. The district court detailed several occasions on which Dennis represented himself as being the sole owner of the Riverbend Property, such as in loan applications, tax filings, business permits, and court filings (including his verified petition for divorce from Tammy). None of these documents reflected any corporate ownership of the Riverbend Property.

¶ 8 After closing the real estate transaction, Tammy and Dennis jointly designed and

built their home on the Riverbend Property. They also jointly developed the property surrounding the home, installing water lines and fencing, for example. They completed construction in December 1999 and moved into the home shortly thereafter.

¶ 9 Tammy and Dennis's primary goal in purchasing the Riverbend Property was to fulfill Tammy's "lifelong dream" of opening and operating an equestrian business. The district court found that both Tammy and Dennis "were fully involved in building all the equestrian facilities." The equestrian business began operation in April 2002, with Tammy running the business alone and "all business income ... deposited into a joint account."

¶ 10 In January 2005, the couple separated and Dennis filed a verified petition for divorce. Tammy and Dennis continued to operate the equestrian business jointly for several months until the divorce court ordered them to stop. Soon thereafter, Dennis's live-in girlfriend began operating a "new" equestrian business using the facilities of the previous equestrian business operated by Tammy. The district court found that "[p]rior to moving in with Dennis, [the girlfriend] had no background in the equestrian business and had never received training for, nor been involved in, running such a business." Furthermore, the girlfriend "acknowledged that 'a number' of her customers" came from Tammy's equestrian business.

¶ 11 The divorce court entered a bifurcated decree of divorce in December 2005. Tammy then brought suit in district court asserting several claims against Dennis, Rosalie in both her individual and representative [1] capacities, and the various corporate entities created by Dennis. First, Tammy sought to have the court "impose a constructive trust— for her and Dennis' joint benefit and use— upon any right, title and interest that may be held in" the Riverbend Property. Second, she asked the court to reform title to the Riverbend Property "to reflect that legal and equitable title ... properly belongs to Dennis, either in his own right or for their joint

use and benefit." Third, she requested the court "to quiet title in [the Riverbend Property] to Dennis, either in his own right or as trustee of the constructive trust sought under the first claim for relief." Fourth, she asked for four million dollars in damages "for Dennis' alleged breach of contract to hold, use, and maintain [the Riverbend Property] for their joint use and benefit." Fifth, she sought an "order directing Dennis to specifically perform the oral agreement alleged to exist under Tammy's fourth claim for relief."

¶ 12 After a four-day trial, the district court entered its order granting Tammy the relief she requested. The district court first found that Construct Tech and Construction Industrial "have always been nothing more than Dennis' 'alter egos.'" With respect to Construct Tech, the district court found that the "corporate formalities have been only infrequently maintained." With respect to Construction Industrial, the district court found that "the purported 'partnership' between Dennis and his parents was also a sham" because "[t]he evidence was that neither of the Hendricksons ever contributed any capital to the partnership, never took part in the operation of Construction Industrial as a business, and never received or declared any partnership profits." The district court further concluded that even had a partnership lawfully existed, that partnership "was dissolved, as a matter of law, in December 2003 as a result of Ed Hendrickson's death."

¶ 13 These conclusions led the district court to hold that "Tammy has proven, by clear and convincing evidence, that the [c]ourt should disregard how record title to the Riverbend [P]roperty is presently held ... and should instead impress a constructive trust upon that property for Tammy's benefit." Furthermore, the court was "persuaded that title to [the Riverbend Property] should be reformed to reflect Dennis as the holder of both legal and equitable title ... subject to the constructive trust." Thus, the court declared the Riverbend Property "part of the marital estate ... subject to equitable

---

1. Rosalie is the trustee of the Hendrickson Family Trust, which Ed established in 1990. This litigation involved a dispute over whether the Trust had any claims to various assets, including the Riverbend Property, at issue in the divorce proceedings.

distribution by the divorce court." The district court left further determination of what constituted marital assets to the divorce court in a subsequent proceeding.

¶ 14 Next, the court concluded that "Tammy and Dennis reached an express oral agreement to purchase, hold, and develop the [Riverbend Property], and the equestrian business therein, for their mutual enjoyment and benefit," and that Dennis breached that agreement. The district court left the determination of damages to the divorce court.

¶ 15 Several parties filed notices of appeal to challenge the district court's decision. The first notice of appeal was filed by Rosalie Hendrickson in her capacity as Trustee. The second notice of appeal was filed by Dennis. The third notice of appeal was filed by Rosalie Hendrickson in her individual capacity, Construct Tech, and Construction Industrial (collectively, the Potential Appellants). We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j).

## STANDARD OF REVIEW

¶ 16 "Whether appellate jurisdiction exists is a question of law which we review for correctness...." *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 11, 199 P.3d 957 (internal quotation marks omitted).

¶ 17 "We review a grant of equitable relief for an abuse of discretion." *Mack v. Utah State Dep't of Comm.*, 2009 UT 47, ¶ 22, 221 P.3d 194. "When reviewing a district court's decision, [w]e review [its] factual findings for clear error and ... its legal conclusions for correctness." *T–Mobile USA, Inc. v. Utah State Tax Comm'n*, 2011 UT 28, ¶ 9, 254 P.3d 752 (first alteration in original) (internal quotation marks omitted).

## ANALYSIS

¶ 18 Dennis, Rosalie Hendrickson in her capacity as Trustee, and the Potential Appellants claim several errors in the district court's resolution of the case. We first evaluate which of the parties properly preserved a right to appeal.

## I. THE NOTICE OF APPEAL

¶ 19 The first issue is whether we have jurisdiction over the appeal by the Potential Appellants. Tammy argues that their appeal was untimely filed. The Potential Appellants counter that the timely notices of appeal filed by Dennis and by Rosalie Hendrickson in her capacity as Trustee sufficed to encompass appellate review of all issues. We agree with Tammy that the Potential Appellants did not file a timely notice of appeal.

¶ 20 Rule 4(a) of the Utah Rules of Appellate Procedure states in relevant part that "the notice of appeal ... shall be filed ... within 30 days after the date of entry of the judgment." Rule 4 permits various limited extensions to the thirty-day filing deadline. First, the timely filing of specified post-judgment motions may extend the time for filing a notice of appeal. *See* UTAH R.APP. P. 4(b). Second, "[i]f a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed." *Id.* 4(d). Third, the rules allow the district court discretion, "upon a showing of excusable neglect or good cause," to "extend the time for filing a notice of appeal upon motion filed not later than 30 days after the expiration of the time prescribed by [rule 4(a)]." *Id.* 4(e).

¶ 21 In this case, the district court filed its Notice of Entry of Judgment on March 3, 2009. Rosalie Hendrickson, in her representative capacity as Trustee, filed a Notice of Appeal on March 30—within the thirty-day limit established by rule 4(a). On April 8, Dennis timely filed his Notice of Appeal pursuant to rule 4(d). No parties filed a motion under rule 4(e) for an extension of time to file a notice of appeal. Then on June 5, an Amended Notice of Appeal was filed, which for the first time included the Potential Appellants. As the Potential Appellants did not properly notice their appeal within the time specified by rule 4, we lack jurisdiction over their appeal. *Reisbeck v. HCA Health Servs. of Utah, Inc.*, 2000 UT 48, ¶ 5, 2 P.3d 447.

¶ 22 The Potential Appellants argue that their claims can nonetheless be consid-

ered by this court for three reasons. First, they contend that the reference to Rosalie as Trustee in the notice of appeal has no legal effect, and therefore Rosalie preserved claims in both her individual and representative capacities. Similarly, they claim that Dennis's appeal in his individual capacity preserves Construct Tech's right of appeal, as Dennis is the sole shareholder. Third, assuming they win on the first argument, the Potential Appellants then argue that Construction Industrial's claims are preserved for appeal through the notices of appeal filed by its two remaining individual partners. We disagree with all three arguments.

¶ 23 Contrary to the Potential Appellants' assertions, our procedural rules require that notices of appeal specifically indicate which parties seek appellate review. Rule 3(d) of the Utah Rules of Appellate Procedure states in relevant part that "[t]he notice of appeal shall specify the party or parties taking the appeal." We have noted that rule 3(d) "requires only specification of the parties *taking* the appeal, not of all the parties involved." *Scudder v. Kennecott Copper Corp.*, 886 P.2d 48, 50 (Utah 1994). By implication, it is significant that the notice of appeal must identify the specific parties who seek appellate review. As the U.S. Supreme Court has noted with regard to rule 3(d)'s federal equivalent, the specificity requirement is jurisdictional; thus, general principles of liberally construing rules of procedure do not apply. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316–18, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988); *see also id.* at 318, 108 S.Ct. 2405 (holding that "use of the phrase 'et al.' ... utterly fails to provide" adequate notice to appellees or the court).

¶ 24 The identification of the parties taking the appeal therefore differs from the identification of "specifically which judgment is being appealed," for which "we have long adhered to the policy that where the notice of appeal sufficiently identifies the final judgment at issue and the opposing party is not prejudiced, the notice of appeal is to be liberally construed." *Kilpatrick v. Bullough Abatement, Inc.*, 2008 UT 82, ¶ 14, 199 P.3d 957 (internal quotation marks omitted). The

identification of *some* parties taking an appeal, however, can never sufficiently identify "*the* party or parties taking the appeal" as required by rule 3(d). Under the interpretation proposed by the Potential Appellants, appellees would have to assume that *all* parties were taking an appeal whenever at least one party files a notice of appeal. This does not comport with rule 3(d)'s requirement to list "the party or parties taking the appeal."

¶ 25 The Potential Appellants' arguments fail in light of rule 3(d)'s specificity requirements. The caption in this case reflects the existence of several named defendants, and lists Rosalie repeatedly—once as an individual, and then separately in her capacity as Trustee. Similarly, Dennis and Construct Tech are separately identified defendants to Tammy's action. Under rule 3(d)'s specificity requirement, the notices of appeal by Rosalie as Trustee and Dennis are insufficient to extend appellate review to claims by other defendants. We therefore have jurisdiction to consider only the timely filed claims made by Dennis and by Rosalie in her capacity as Trustee. At oral argument, counsel for the defendants conceded that there are no claims by the Trust on appeal. Accordingly, we consider only Dennis's claims.

## II.  THE DISTRICT COURT'S DECISION

¶ 26 In examining Dennis's claims on appeal, we recognize that he faces a heavy burden. This is because "[w]e review a [district court's] grant of equitable relief for an abuse of discretion." *Mack v. Utah State Dep't of Comm.*, 2009 UT 47, ¶ 22, 221 P.3d 194. And we "can properly find abuse only if no reasonable person would take the view adopted by the trial court." *T–Mobile USA, Inc. v. Utah State Tax Comm'n*, 2011 UT 28, ¶ 41, 254 P.3d 752 (alterations omitted) (internal quotation marks omitted). An error of law by the district court, however, would be an abuse of discretion. *See, e.g., Eskelson ex rel. Eskelson v. Davis Hosp. & Med. Ctr.*, 2010 UT 59, ¶ 5, 242 P.3d 762.

¶ 27 With this standard of review in mind, we consider Dennis's challenge to the district court's decision. First, he argues that a constructive trust is not an available remedy

in the circumstances of this case. Second, he contends that the record does not support the district court's conclusion that an express oral agreement existed. Third, he asserts that the district court erred in declaring the Riverbend Property part of the marital estate, because such a determination is properly before the divorce court. We consider each of these claims in turn.

### A. The District Court Did Not Err in Imposing a Constructive Trust

¶ 28 The district court based its imposition of a constructive trust on two factors. First, it noted the "clear and convincing evidence" that Construct Tech and Construction Industrial were both alter egos of Dennis. Specifically, the district court held that "[t]he assets nominally held by Construct Tech and Construction Industrial are hereby determined to be Dennis' personal assets." Second, it noted the "clear and convincing proof that through Tammy and Dennis' joint and individual efforts to develop the property, build their home, and create the facilities from which to operate their equestrian business, the property lost its premarital character."

¶ 29 We have previously noted that "the forms and varieties of [constructive] trusts . . . are practically without limit." *Rawlings v. Rawlings*, 2010 UT 52, ¶ 24, 240 P.3d 754 (second alteration in original) (internal quotation marks omitted). The remedy of imposing a constructive trust is available "as a matter of equity where there has been (1) a wrongful act, (2) unjust enrichment, and (3) specific property that can be traced to the wrongful behavior." *Wilcox v. Anchor Wate Co.*, 2007 UT 39, ¶ 34, 164 P.3d 353. Importantly, "[s]uch trusts are usually imposed where injustice would result if a party were able to keep money or property that rightfully belonged to another." *Id.*

¶ 30 "With regard to the imposition of a constructive trust, the availability of such a remedy is . . . a question of law reviewed for correctness." *Rawlings*, 2010 UT 52, ¶ 21, 240 P.3d 754. "But if such a remedy is available, the trial court is accorded considerable latitude and discretion in applying and formulating an equitable reme-

dy, and [it] will not be overturned unless it [has] abused its discretion." *Id.* (alterations in original) (internal quotation marks omitted). When altering a deed to impose a constructive trust, however, "we require that the evidence offered to overcome a deed must be clear and convincing." *Id.* ¶ 24 (internal quotation marks omitted).

¶ 31 In this case, the district court relied on "clear and convincing evidence" of several factors justifying the imposition of a constructive trust. First, the district court held that Construct Tech and Construction Industrial were Dennis's alter egos. Based on that holding, it concluded that "[t]he assets nominally held by Construct Tech and Construction Industrial," which includes the Riverbend Property, are "determined to be Dennis' personal assets." The alter ego determination was a necessary threshold inquiry to allow inclusion of the Riverbend Property as part of the property subject to equitable distribution in subsequent divorce proceedings. Second, the district court recognized that Tammy's involvement in "develop[ing] the property, build[ing] their home, and creat[ing] the facilities from which to operate their equestrian business" all combined to cause the Riverbend Property to lose "its premarital character."

¶ 32 Dennis raises two challenges to the district court's imposition of a constructive trust. First, he contends that a constructive trust may not be imposed as a remedy for breach of contract. Second, he argues that the defendants were not unjustly enriched at Tammy's expense because Tammy had actual knowledge of the title ownership for the Riverbend Property. We disagree.

¶ 33 The district court's decision to impose a constructive trust has adequate support in the findings of fact. Dennis's arguments to the contrary misapprehend the basis for the district court's ruling. As Tammy correctly notes, the district court did not base its imposition of a constructive trust on any breach of contract, but rather on its equitable findings that Dennis is the true owner of the Riverbend Property. In light of that finding, the district court named Dennis the trustee of the constructive trust. Then, in

determining the constructive trust's beneficiaries, the district court held that Tammy's significant contributions to the development of the property made her a beneficiary alongside Dennis. The district court properly reserved the question of the *extent* of Tammy's interest in the property for further determination by the divorce court.

¶ 34 Dennis's argument regarding Tammy's actual knowledge regarding title similarly fails. Under our case law, a court may impose a constructive trust to avoid injustice and unjust enrichment. *See Wilcox*, 2007 UT 39, ¶ 34, 164 P.3d 353. There is no case law suggesting that actual knowledge as to record title ownership somehow bars a court's equitable determination to impose a constructive trust (thereby altering the record title). As previously noted, the district court also found that Tammy contributed significantly to "develop[ing] the property, build[ing] their home, and creat[ing] the [equestrian] facilities." Furthermore, even if the express oral agreement is not enforceable as a contract, *see infra* Part II.B, the district court found sufficient evidence establishing an agreement between Tammy and Dennis to "purchase, hold, and develop" the Riverbend Property "for their mutual enjoyment and benefit." These findings, unchallenged by Dennis on appeal, are sufficient to justify the district court's imposition of a constructive trust as a matter of equity. We see no reason "to weigh for ourselves the relative equities" in this case, given that we have "grant[ed] trial courts broad discretion in imposing constructive trusts to remedy unjust enrichment." *Rawlings*, 2010 UT 52, ¶ 45, 240 P.3d 754.

### B. The District Court Erred in Finding an Enforceable Express Oral Agreement

¶ 35 After concluding that imposition of a constructive trust was justified by the circumstances, the district court next concluded that "Tammy and Dennis reached an express oral agreement to purchase, hold, and develop the property, and the equestrian business therein, for their mutual enjoyment and benefit." The district court held that the express oral agreement was an enforceable contract which Dennis had breached, causing Tammy to suffer damages.

¶ 36 Dennis raises two challenges to the district court's conclusions regarding any express oral agreement. First, he argues that there is insufficient evidence to sustain the district court's factual finding that an enforceable express oral agreement existed. Second, he contends that even if there was sufficient evidence establishing the *existence* of an express oral agreement, the agreement is not *enforceable* as a contract because it lacks sufficient specificity. We agree that the record does not provide sufficient specificity to establish an enforceable express oral agreement.

¶ 37 "It is fundamental that a meeting of the minds on the integral features of an agreement is essential to the formation of a contract. An agreement cannot be enforced if its terms are indefinite." *Nielsen v. Gold's Gym*, 2003 UT 37, ¶ 11, 78 P.3d 600 (internal quotation marks omitted). Furthermore, "[a] contract may be enforced even though some contract terms may be missing or left to be agreed upon, but if the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." *Id.* ¶ 12 (internal quotation marks omitted).

¶ 38 In this case, the evidence in the record supports at best a conclusion that Tammy and Dennis agreed to purchase, build upon, and improve the Riverbend Property together. Although the district court correctly noted evidence of "adequate consideration" for such an agreement stemming from Tammy's contributions to the Riverbend Property, there is no further evidence in the record regarding definite terms for this purported contract. The lack of such detail renders this express oral agreement unenforceable. *See Prince, Yeates & Geldzahler v. Young*, 2004 UT 26, ¶¶ 13–14, 94 P.3d 179 (refusing to enforce an express oral agreement that lacked "definite language addressing the amount, timing, or conditions of [one party's] potential additional compensation"). We therefore reverse this portion of the district court's decision.

### C. The District Court Did Not Err in Determining the Riverbend Property to Be Part of the Marital Estate

¶ 39 The district court "determine[d] and declare[d] that the Riverbend [P]roperty is part of the marital estate and will be subject to equitable distribution by the divorce court." In so doing, the district court recognized that Tammy has a claim to the Riverbend Property, but reserved for the divorce court the determination of the *extent* of that claim. The district court based its conclusion on the "clear and convincing proof that through Tammy and Dennis' joint and individual efforts to develop the property, build their home, and create the facilities from which to operate their equestrian business, the property lost its premarital character."

¶ 40 Dennis asserts that the question whether the Riverbend Property constitutes marital property lies outside the scope of this proceeding and instead will be properly before the divorce court. We disagree. As we have noted above, the district court did not err in imposing a constructive trust. The decision whether to impose a constructive trust necessarily required the district court to determine whether the Riverbend Property constituted a marital asset. First, the imposition of a constructive trust inherently required the district court to evaluate whether Tammy had *any* interest in the property. Second, if the Riverbend Property was not a part of the marital estate, then the imposition of a constructive trust would accomplish nothing in the course of these divorce proceedings.

¶ 41 Pursuant to the district court's order and judgment, the Riverbend Property is now held in a constructive trust; Dennis holds legal title as trustee, and Tammy and Dennis are beneficiaries. Furthermore, the district court properly held that "[t]he extent and portion of [Tammy and Dennis's] respective beneficial interests and benefits shall be as hereafter determined by the" divorce court. As a result, the divorce court can proceed on the basis of the district court having held that Tammy has an equitable claim to the Riverbend Property. It will be within the divorce court's sole discretion to determine the *extent* of that claim in conducting its equitable distribution of the marital assets. *See Maxfield v. Maxfield (In re Estate of Maxfield),* 856 P.2d 1056, 1058 (Utah 1993) ("[I]n a divorce case the court has broad equitable powers to make a fair distribution of the parties' property irrespective of the form of ownership in which it may be held.").

### CONCLUSION

¶ 42 We first hold that rule 3(d) of the Utah Rules of Appellate Procedure requires that each party seeking to bring an appeal must be specified on the notice of appeal, and that identification of *some* parties taking an appeal does not suffice to preserve the appeal rights of *all* parties beyond rule 4's allowances.

¶ 43 With respect to the merits of Dennis's claims, we hold that the district court did not err in imposing a constructive trust on the Riverbend Property and determining that the Riverbend Property is part of the marital estate. But we hold that the district court erred in finding an enforceable express oral agreement, as the purported agreement lacked sufficient specificity. We therefore affirm in part and reverse in part, and remand for further proceedings consistent with this opinion.

Associate Chief Justice DURRANT, Justice PARRISH, Justice NEHRING, and Justice LEE joined.