**2016 UT App 144**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
COLORADO STEVEN IRWIN,
Appellant.

Opinion
No. 20150217-CA
Filed July 14, 2016

Third District Court, West Jordan Department
The Honorable Charlene Barlow
No. 131401107

Teresa L. Welch and Christine Seaman, Attorneys
for Appellant

Sean D. Reyes and William M. Hains, Attorneys
for Appellee

SENIOR JUDGE JUDITH M. BILLINGS authored this Opinion, in
which JUDGES GREGORY K. ORME and KATE A. TOOMEY
concurred.[1]

BILLINGS, Senior Judge:

¶1    Colorado Steven Irwin appeals the trial court's calculation
of restitution in connection with his theft of a number of watches
from a retail store. We vacate the restitution order and remand
for further proceedings.

---

1. Senior Judge Judith M. Billings sat by special assignment as
authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

BACKGROUND

¶2    On May 23, 2013, Irwin broke into a watch shop in Sandy, Utah, and stole 102 Rockwell watches with retail values ranging from $79 to $2,500 each. On November 26, 2013, Irwin pleaded guilty to theft by receiving stolen property, a third-degree felony, and burglary, a third-degree felony. In connection with his plea, Irwin agreed to pay restitution.

¶3    At the restitution hearing, the State presented evidence indicating that the manufacturer's suggested retail price (MSRP) of the stolen watches was $39,004 and that the wholesale value was $19,244. A spreadsheet submitted to the trial court with the victim impact statement calculated the replacement cost of the watches as $13,651.40.[2] The insurer calculated the loss at $35,155.48 but paid the retailer only $6,250.48, due to policy limitations. The State argued that restitution should be based on retail value, calculated using the MSRP value of the watches or, alternatively, the insurer's valuation. Irwin argued that restitution should be based on the $13,651.40 replacement cost. The court agreed with the State that retail value was a more appropriate valuation than replacement cost and used the insurance valuation to calculate restitution. Accordingly, the court ordered Irwin to pay $35,155.48 in restitution—$6,250.48 to the insurance company and $28,905 to the victim. Irwin appeals.

ISSUE AND STANDARD OF REVIEW

¶4    Irwin argues that the trial court exceeded its discretion in determining that restitution should be based on the retail value of the watches rather than their replacement cost. "We will not

---

2. It is unclear why the replacement cost and the wholesale value differ. We leave it to the trial court to determine which of these numbers represents the actual loss suffered by the victim.

disturb a trial court's restitution order unless it exceeds that prescribed by law or [the trial court] otherwise abused its discretion. A trial court will be deemed to have abused its discretion only if no reasonable [person] would take the view adopted by the trial court." *State v. Ludlow*, 2015 UT App 146, ¶ 5, 353 P.3d 179 (alterations in original) (citation and internal quotation marks omitted).

ANALYSIS

¶5      "In the calculation of . . . restitution, the victim is limited to recovering only 'pecuniary damages.'" *State v. Brown*, 2014 UT 48, ¶ 22, 342 P.3d 239. For purposes of the restitution statute, "pecuniary damages" are defined as "demonstrable economic injury . . . which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities and includes the fair market value of property taken, destroyed, broken, or otherwise harmed." Utah Code Ann. § 77-38a-102(6) (LexisNexis Supp. 2015). Often, "[f]air market value is measured by what the owner [of the property] could expect to receive, and the amount a willing buyer would pay to the true owner for the stolen item." *State v. Greene*, 2006 UT App 445, ¶ 11, 147 P.3d 957 (second alteration in original) (citation and internal quotation marks omitted) (defining fair market value in the context of determining the degree of a theft offense).

¶6      Nevertheless, as the "primary objective in rendering an award of damages for conversion[3] is to award the injured party

---

3. "Cases addressing damages in the context of civil conversion actions are relevant to our analysis because pecuniary damages in the restitution context are those damages 'which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities.'" *State v. Ludlow*,

(continued…)

full compensation for *actual* losses . . . , rules relating to the measure of [restitution] damages are flexible, and can be modified in the interest of fairness." *State v. Corbitt*, 2003 UT App 417, ¶ 9, 82 P.3d 211 (emphasis added) (citations and internal quotation marks omitted); *see also Mahana v. Onyx Acceptance Corp.*, 2004 UT 59, ¶ 26, 96 P.3d 893 ("To the extent possible, the fundamental purpose of compensatory damages is to place the plaintiff in the same position he would have occupied had the tort not been committed."). For example, we have held that calculation of restitution for the loss of a two-week-old truck should be based on purchase price where the depreciated market value would not adequately compensate the victim for his loss. *See Corbitt*, 2003 UT App 417, ¶¶ 15–16.

¶7　　Purchase price—or replacement cost—is a better measure of a victim's loss than retail value where, as here, the victim had the ability to replace the stolen items for much less than their retail value.[4] Indeed, "wholesale market price is to be preferred as a test over the retail when . . . it is clearly the more accurate

---

(…continued)
2015 UT App 146, ¶ 6 n.3, 353 P.3d 179 (quoting Utah Code Ann. § 77-38a-102(6) (LexisNexis 2012)).

4. When value is an element of an offense, "the weight of authority supports the rule that an item's retail price is prima facie evidence of its market value at the time of the theft." *Morris v. State*, 334 P.3d 1244, 1248 & n.13 (Alaska Ct. App. 2014) (collecting cases). It does not necessarily follow that the same is true in calculating value for purposes of restitution, as "rules relating to the measure of [restitution] damages are flexible," *State v. Corbitt*, 2003 UT App 417, ¶ 9, 82 P.3d 211 (citation and internal quotation marks omitted), and intended to further the purpose of restitution—"to compensate victims for the harm caused by a defendant," *Monson v. Carver*, 928 P.2d 1017, 1027 (Utah 1996).

measure" of the victim's loss. *Illinois Cent. R.R. v. Crail*, 281 U.S. 57, 65 (1930); *accord* 22 Am. Jur. 2d *Damages* § 293 (2013). To calculate restitution based on retail value when the loss is "capable of replacement . . . at wholesale market price without added expense," "ignores the basic principle underlying common law remedies that they shall afford only compensation for the injury suffered." *Illinois Cent. R.R.*, 281 U.S. at 63–64.

¶8    The Restatement (Second) of Torts explains that fair market value may vary depending on the markets in which an item is sold: "Since the measure of recovery is determined by the harm done, the market that determines the measure of recovery by a person whose goods have been taken, destroyed or detained is that to which he would have to resort in order to replace the subject matter." Restatement (Second) of Torts § 911 cmt. d (Am. Law Inst. 1979). Thus, the market value of goods taken from a retail dealer should generally be based on wholesale value, and "[d]amages for the profits that the . . . retail dealer would normally anticipate from a sale are not ordinarily allowed" unless the retailer can demonstrate certainty regarding lost profits, such as by demonstrating that he was unable to obtain substitutes to satisfy his customers.[5] *Id.*

---

5. The State asserts that the victim should be compensated for his inability to sell the stolen watches. But there is no evidence to suggest that the victim actually suffered further pecuniary loss as a result of his inability to sell the stolen watches (e.g., that the victim was unable to satisfy its customers by obtaining replacement watches or that the retail value of the watches has decreased since the theft). As Irwin points out, awarding the victim the retail value of the watches would allow him to receive a profit twice—he could "repurchase 102 Rockwell watches at the replacement cost . . . , pocket the remaining monies, and then make even more additional monies by selling the Rockwell watches 'at the [retail] price *again*.'"

¶9    This approach is consistent with our jurisprudence indicating that restitution should be limited "to that amount which is necessary to compensate a victim for losses caused by the defendant," *Monson v. Carver*, 928 P.2d 1017, 1027 (Utah 1996); *see also* Utah Code Ann. § 77-38a-302(2)(a) (LexisNexis Supp. 2015) (defining "complete restitution" as "restitution necessary to compensate a victim for all losses caused by the defendant"), and that restitution should not be used to grant a windfall to the victim, *State v. Ludlow*, 2015 UT App 146, ¶ 13, 353 P.3d 179; *see also* Utah Code Ann. § 77-38a-102(6), (11) (excluding punitive damages from being considered as part of a restitution award). Thus, while we acknowledge that the "legal definition" of market value is ordinarily "retail, not wholesale," *Winters v. Charles Anthony, Inc.*, 586 P.2d 453, 454 (Utah 1978), wholesale value or replacement cost is generally a more appropriate measure of pecuniary loss where the victim is a retail dealer.

CONCLUSION

¶10    Because restitution is limited to the amount necessary to compensate the victim for its loss, we conclude that retail value was not an appropriate measure of the victim's pecuniary damages in this case. Thus, we reverse the trial court's restitution order and remand for recalculation of an appropriate restitution award, in accordance with the guidance offered in this decision.

———————