**2019 UT App 179**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
BASHAR SABBAGH,
Appellant.

Opinion
No. 20180681-CA
Filed November 7, 2019

Second District Court, Ogden Department
The Honorable Mark R. DeCaria
No. 171901390

Emily Adams and Cherise M. Bacalski, Attorneys
for Appellant

Christopher F. Allred and Sean D. Brian, Attorneys
for Appellee

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and KATE APPLEBY
concurred.

HARRIS, Judge:

¶1     In June 2017, the bookstore at Weber State University (the Store) was running a screaming deal on sets of wireless headphones: although the Store had paid a wholesale price of $299 for the headphones, it marked them for sale for just $175. But this deal—as good as it was—was not good enough for Bashar Sabbagh, who elected to walk into the Store and steal four sets of the headphones. After being caught and prosecuted for retail theft, Sabbagh pled guilty, and the district court imposed a sentence that included a requirement that Sabbagh pay restitution to the Store.

¶2      At the restitution hearing, the State argued that the proper restitution amount should be $1,199.76 ($299.94 x 4), because the Store paid a wholesale cost of $299 for the headphones and would have to pay that price to obtain replacement items. The State asserted that the Store had been selling the headphones as a "loss leader," hoping that the low price would attract customers into the Store, who might buy additional merchandise on that occasion as well as future occasions. Sabbagh, on the other hand, pointed out that the fair market value of the headphones should be the price at which they had been offered for sale, and accordingly argued that the proper restitution amount should be $700 ($175 x 4). The district court agreed with the State, and ordered Sabbagh to pay $1,199.76 in restitution.

¶3      Sabbagh now appeals from the district court's restitution order, asserting that the court incorrectly calculated the restitution amount as the wholesale value rather than the (in this case lesser) retail value. "We will not disturb a [district] court's restitution order unless it exceeds that prescribed by law or the [district] court otherwise abused its discretion." *State v. Ludlow*, 2015 UT App 146, ¶ 5, 353 P.3d 179 (quotation simplified). "To the extent that the district court made legal determinations in connection with its restitution analysis, we review those legal determinations for correctness." *State v. Jamieson*, 2017 UT App 236, ¶ 13, 414 P.3d 559, *cert. granted*, 421 P.3d 439 (Utah 2018).

¶4      When a defendant commits a crime that results in "pecuniary damages," a sentencing court "shall order that the defendant make restitution" to the victims of the crime. *See* Utah Code Ann. § 77-38a-302(1) (LexisNexis Supp. 2019). The term "pecuniary damages" is defined by statute as "all demonstrable economic injury . . . arising out of the facts or events constituting the defendant's criminal activities and includes the fair market value of property taken." *Id.* § 77-38a-102(6) (2017). Generally speaking, "fair market value is measured by what the owner of the property could expect to receive, and the amount a willing

buyer would pay to the true owner for the stolen item." *Ludlow*, 2015 UT App 146, ¶ 6 (quotation simplified). "Nevertheless, the measure of damages is flexible, allowing [district] courts to fashion an equitable award to the victim." *Id.* (quotation simplified). In calculating restitution, a court should "consider all relevant facts," including "the cost of the damage or loss," and "the income lost by the victim as a result of the offense." *See* Utah Code Ann. § 77-38a-302(5)(b)(i), (iv).

¶5     Almost always, a retailer offers an item for sale at a price *higher* than the wholesale price the retailer paid to obtain the item. We have already held that, in retail theft cases arising out of this typical scenario, the proper measure of a victim's lost pecuniary damages is the wholesale replacement cost of the stolen item. *See State v. Irwin*, 2016 UT App 144, ¶ 7, 379 P.3d 68 ("Purchase price—or replacement cost—is a better measure of a victim's loss than retail value where, as here, the victim had the ability to replace the stolen items for much less than their retail value."). We reasoned that awarding a retail store its full lost profits would be improper, both because the store would usually be able to recover those profits by re-selling a replacement item, and because lost profits are often uncertain. *Id.* ¶ 8 ("Damages for the profits that the retail dealer would normally anticipate from a sale are not ordinarily allowed unless the retailer can demonstrate certainty regarding lost profits, such as by demonstrating that he was unable to obtain substitutes to satisfy his customers." (quotation simplified)). We were also wary of the possibility that restitution would be improperly used "to grant a windfall to the victim." *Id.* ¶ 9.

¶6     In this case, we are presented with a different situation than was presented in *Irwin*. Here, the retail price at which the item was offered was substantially *lower* than the wholesale price at which the Store acquired the item. Despite the different factual predicate, the State urges us to follow *Irwin* and conclude that, in this situation as well as the typical one, wholesale

replacement cost rather than the retail sale price should represent the appropriate restitution amount. Sabbagh, on the other hand, argues that this situation is materially different from the typical situation, and that in this case the Store's pecuniary damage should be measured by the price at which the Store was actually offering the headphones for sale on the day of the theft. We find Sabbagh's position more persuasive, and we disagree with the State's position that *Irwin* is controlling here.

¶7     As noted above, "fair market value" is equal to the amount that "the owner of the property could expect to receive, and the amount a willing buyer would pay to the true owner for the stolen item." *Ludlow*, 2015 UT App 146, ¶ 6 (quotation simplified). Sabbagh's argument is simple: the Store had marked and offered the headphones for sale on the date of theft for $175, signaling that it was willing to accept that amount from any willing buyer. No rational buyer, in a retail context, would offer to pay *more than* the offered price, and therefore Sabbagh contends that the marked retail price of the item constitutes a ceiling (although not necessarily a floor, *see Irwin*, 2016 UT App 144, ¶ 8) on the retailer's pecuniary damages.

¶8     The State's counterargument is not quite as simple. Emphasizing the "loss leader" concept, the State argues that Sabbagh's theft deprived the Store of the opportunity to "attract[] a paying customer" by offering the headphones for sale at a low price, and that the Store therefore "los[t] the value of its investment in the 'loss leader' sale." We do not doubt that the "loss leader" strategy sometimes pays dividends for retailers. But the State offers no actual evidence of what kind of payoff the Store could have expected from its marketing plan, and offers no evidence tying the proffered $299-per-item price to any established or expected "loss leader" investment yield. Indeed, at least on this record, it appears to us that any benefit that the Store eventually may have realized from its "loss leader" investment is entirely speculative and unquantifiable. And we

noted in *Irwin* our reluctance to peg restitution amounts to speculative components of damage. *See Irwin*, 2016 UT App 144, ¶ 8 (declining to include "lost profits" in restitution awards, "unless the retailer can demonstrate certainty"). We therefore decline the State's invitation to engage in the exercise of attempting to quantify the loss that the Store *may* have incurred due to the loss of potential additional customers being enticed into the Store because of the unusually-low marked price of the headphones. Instead, we focus our analysis on compensating actual loss.

¶9  And the Store's actual loss was $175 for each set of headphones. If Sabbagh had not stolen the headphones, they would have remained on sale for $175, and there is no evidence indicating that the Store would have refused an offer from an actual buyer for that amount. To that extent, the Store's damages are quantifiable and certain. While actual buyers may have purchased additional merchandise along with the headphones, and may have even turned into repeat customers, we have no way of knowing, on this record, how many additional visits such customers would have made, or how much additional merchandise they would have purchased. We certainly have no way of knowing whether any such additional purchases would have been equivalent to $124.94 per set of headphones, which is the additional amount the State is claiming.

¶10  "To the extent possible, the fundamental purpose of compensatory damages is to place the plaintiff in the same position he would have occupied had the tort not been committed." *Mahana v. Onyx Acceptance Corp.*, 2004 UT 59, ¶ 26, 96 P.3d 893;[1] *see also United States v. Ritchie*, 858 F.3d 201, 215 (4th

---

1. As we noted in *State v. Ludlow*, "[c]ases addressing damages in the [civil] context" are "relevant to our analysis because pecuniary damages in the restitution context are those damages

(continued…)

Cir. 2017) ("[T]he defendant is expected from the outset to repay *all* of the actual losses that he caused, but no more."). "The State bears the burden of establishing restitution," *State v. Oliver*, 2018 UT App 101, ¶ 22, 427 P.3d 495, and without additional evidence demonstrating a higher degree of "certainty regarding lost profits," *see Irwin*, 2016 UT App 144, ¶ 8, we are unable to conclude that the State has borne its burden of demonstrating that the proper measure of the Store's pecuniary damages is anything higher than $175 per unit.

¶11     In most retail theft cases—those in which the retail price is *higher* than the wholesale price, and the retailer offers no evidence of certainty regarding lost profits—the appropriate measure of a victim's pecuniary damages will be the "wholesale value or replacement cost" of the stolen item. *See id.* ¶¶ 8–9. But in those unusual situations, like this one, in which the retailer offers the item for sale at a price *lower* than wholesale price, the appropriate measure of a victim's pecuniary damages—again, absent more certain proof regarding lost profits—will be the price at which the item is offered for sale on the date of the theft.

¶12     Accordingly, the district court incorrectly calculated the restitution amount in this case. We therefore vacate the court's restitution order, and remand this case for further proceedings consistent with this opinion.

———————

(…continued)
'which a person could recover in a civil action arising out of the facts or events constituting the defendant's criminal activities.'" 2015 UT App 146, ¶ 6 n.3, 353 P.3d 179 (quoting Utah Code Ann. § 77-38a-102(6)).