2024 UT App 55

# THE UTAH COURT OF APPEALS

WASHINGTON COUNTY WATER CONSERVANCY DISTRICT,
Appellant,
*v.*
WASHINGTON TOWNHOMES, LLC; HOMES BY HARMONY, INC.;
COTTON MEADOWS, LLC; SALISBURY DEVELOPMENT, LLC;
SOUTHERN UTAH HOME BUILDERS ASSOCIATION; IVORY SOUTHERN,
LLC; PERRY HOMES UTAH; AND HENRY WALKER CONSTRUCTION OF
SOUTHERN UTAH, LLC,
Appellees.

Opinion
No. 20220403-CA
Filed April 11, 2024

Fifth District Court, St. George Department
The Honorable Jeffrey C. Wilcox
No. 130500465

Robert C. Keller, Scott P. Powers, Nathanael J.
Mitchell, and Melinda K. Bowen,
Attorneys for Appellant

Benson L. Hathaway Jr., Justin W. Starr, Adam D.
Wahlquist, Craig M. Call, and Thomas K. Checketts,
Attorneys for Appellees

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES GREGORY K. ORME and DAVID N. MORTENSEN
concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     This case involves a dispute between the Washington County Water Conservancy District (the District) and a class of property owners over the legality of impact fees that has lingered in litigation for over a decade. The District appeals the district court's appointment of a special master to resolve all remaining

issues in this lengthy lawsuit. The plain language of rule 53(b) of the Utah Rules of Civil Procedure permits referral to a special master where the case is to be tried before the bench "only upon a showing that some exceptional condition requires it." Here, the district court exceeded its discretion in determining that certain conditions allowed for the appointment of a special master. Accordingly, we reverse the district court's order of reference.

BACKGROUND

¶2     In 2006, to fund the construction of its facilities and infrastructure, the District adopted impact fees based on its "Regional Water Capital Facilities Plan and Impact Fee Analysis." For nearly ten years, the impact fees were charged to the owners of new developments (collectively, Property Owners) located within the District.

¶3     After the District collected and expended millions of dollars of fees, Property Owners sued the District in 2013, alleging the impact fees did not comply with Utah's Impact Fee Act (the Act), *see* Utah Code §§ 11-36a-201 to -205, and sought a refund of millions of dollars for improperly assessed fees. Over the course of several years of litigation, the parties engaged in substantive and procedural motion practice (including several partial summary judgment motions that limited Property Owners' claims), addressed the issue of class certification, and conducted and completed fact and expert discovery. While still considering multiple motions to further limit the evidence and claims at trial and the appointment of a class administrator were still pending, Property Owners sought the appointment of a special master to preside over the litigation and to "do all acts and take all measures necessary or proper for the efficient resolution of this dispute." Property Owners argued that appointment of a special master was justified because the case involves "esoteric issues related to [the Act's] application to [the District's] determination,

assessment and collection of impact fees from 2006 through 2017." According to Property Owners, resolution of such issues would require expert testimony from "several witnesses"; "receiving and processing information drawn from hundreds of thousands of pages of documents; and application of a specialized area of law."

¶4 The District opposed the motion. It argued that if Property Owners prevailed, calculating the correct impact fee would be uncomplicated for a number of reasons. The District first argued that the same fee would be applied to all those that paid it. Second, the District argued that the case had been pending since 2013 and interim rulings had narrowed the trial issues before the court. Finally, the District reasoned that the remaining issues before the district court involved evidentiary questions which were "squarely within the jurisdiction of [the] Court." Thus, there was no "exceptional condition or circumstance that would justify such an extraordinary appointment pursuant to [rule] 53(b)."

¶5 The district court granted the motion and explained in its ruling,

> This Court is of the opinion that the use of a Special Master would be beneficial to this litigation. Rules of civil procedure and evidence could be relaxed, and hearings could be informal. A Rule 53(e)(1) and (e)(2) report filed by the Special Master along with findings of fact and conclusions of law would allow the new Judge to focus his or her attention on said findings and conclusions; rather than reviewing the history of the case in preparation for a trial of which the new judge would have a very limited history.
>
> The Court finds that 1) the pending retirement of the Judge; 2) the length of the case; 3) the procedural and substantive complexities of

the case as set forth in [Property Owners'] motion; and, 4) the almost impossible chance that the case can be tried before this Judge retires; are exceptional circumstances that require the appointment of a special master.

¶6 The court's order appointed a retired district court judge as the special master and tasked the master with hearing and resolving all pending and future motions, holding a trial, receiving evidence, and providing a report to the court of his findings of fact and conclusions of law pursuant to rule 53 of the Utah Rules of Civil Procedure.

¶7 The District filed a petition for interlocutory appeal, which we granted.

## ISSUE AND STANDARD OF REVIEW

¶8 The District asserts that the district court abused its discretion by appointing a special master. Specifically, it argues that the reasons the district court used to justify the appointment are not exceptional conditions within the meaning of rule 53(b) of the Utah Rules of Civil Procedure. The District also asserts that the court erred in entering its appointment order without a hearing or argument.

¶9 We review appointments of a special master for an abuse of discretion. *See Plumb v. State*, 809 P.2d 734, 741–43 (Utah 1990) (discussing that when an issue "does not amount to an 'exceptional condition' within the meaning of rule 53(b) that justifies reference" to a special master, then such reference would be an abuse of discretion). A district court exceeds its discretion when the position taken by the court is unreasonable. *State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167; *see also State v. Irwin*, 2016 UT App 144, ¶ 4, 379 P.3d 68. Further, Utah appellate

jurisprudence has long held that "[a]n error of law by the district court . . . would be an abuse of discretion." *Goggin v. Goggin*, 2011 UT 76, ¶ 26, 267 P.3d 885.

ANALYSIS

I. Rule 53(b) Special Master Reference

¶10 Our rules of civil procedure authorize district courts to appoint special masters in certain cases. *See* Utah R. Civ. P. 53(b). We recognize the scope of discretion afforded to district courts in considering the reference of a matter to a special master, and thus the issue presented for our determination on appeal is straightforward: Did the district court exceed its discretion in appointing a special master to resolve all the remaining issues in this yearslong litigation? To answer this question, we must evaluate whether the district court's rationale for making a referral to a special master (i.e., pending retirement, calendar congestion, and length and complexity of the case) actually constituted an exceptional condition sufficient under rule 53(b).

¶11 The record is clear that this was a case expected to be tried before the bench. Relevant to our analysis here, rule 53 provides in part,

> **(b) Reference.** A reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated; in actions to be tried without a jury, save in matters of account, a reference shall, in the absence of the written consent of the parties, be made only upon a showing that some exceptional condition requires it.
>
> **(c) Powers.** . . . . When a party so requests, the master shall make a record of the evidence offered and

excluded in the same manner and subject to the same limitations as provided in the Utah Rules of Evidence for a court sitting without a jury.

. . . .

**(e) Report.**

. . . .

(2) *In non-jury actions*. In an action to be tried without a jury the court shall accept the master's findings of fact unless clearly erroneous. Within 14 days after being served with notice of the filing of the report any party may serve written objections thereto upon the other parties. Application to the court for action upon the report and upon objections thereto shall be by motion and upon notice as prescribed in Rule 6(d). The court after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions.

. . . .

(4) *Stipulation as to findings*. The effect of a master's report is the same whether or not the parties have consented to the reference; but, when the parties stipulate that a master's findings of fact shall be final, only questions of law arising upon the report shall thereafter be considered.

Utah R. Civ. P. 53.

¶12　There is scarce Utah caselaw interpreting what constitutes an "exceptional condition" sufficient to satisfy Utah's rule 53(b) requirement. More than thirty years ago, in *Plumb v. State*, 809

P.2d 734 (Utah 1990), our supreme court had occasion to consider the propriety of the appointment of a special master to determine the amount of an attorney fees award in a class action case arising from the savings and loan crisis.[1] *Id.* at 736. Yet the *Plumb* opinion does not disclose the basis upon which the district court relied in making the reference in the first place. On appeal in *Plumb*, class counsel challenged the district court's reduction of the attorney fees award entered in accordance with the recommendations of the special master. *Id.* at 740. The opinion is silent as to whether class counsel objected or otherwise resisted the reference to a special master prior to the master issuing his first report. It appears that only after the filing of the special master's third report did counsel move to vacate the appointment. *Id.* at 737. In any event, relying on the plain language of rule 53(b), counsel argued, in part, that the district court abused its discretion in referring the issue of attorney fees to a special master because "the issue of attorney fees does not amount to an 'exceptional condition' within the meaning of rule 53(b) that justifies reference . . . to a master." *Id.* at 741.

¶13 Our supreme court rejected counsel's position, finding that the terms of rule 53(b) do not categorically prohibit reference of certain issues to a special master. *See id.* Instead, the court declared that the "preferred way to determine whether an issue . . . is appropriate for reference to a special master is . . . to consider the facts underlying the referred issue to determine whether they constitute an 'exceptional condition.'" *Id.* Then, in applying this rule to the facts, the *Plumb* court did not ultimately speak in terms of an exceptional condition, but instead concluded, "Given the size of the fee requested and the numerous legal and factual issues

---

1. The savings and loan crisis refers to a large scale event in the 1980s where more than a thousand savings and loan associations in the United States failed. *Courtney v. Halleran*, 485 F.3d 942, 943–44 (7th Cir. 2007).

to be considered, we think the attorney fees issue in the case is complex enough[2] to warrant referral to a special master." *Id.* at 741–42.

¶14 The *Plumb* court then went on to catalogue all the ways that the special master had exceeded the reference order, finding that "the entire mode of proceeding followed by the master was improper as a matter of law." *Id.* at 742. But mode of proceeding is not appointment, and the opinion provides no guidance on when to appoint a special master.

¶15 Given this backdrop, we find *Plumb* difficult to apply. Certainly, the case cannot be read to invite district courts to wholly ignore the plain language of rule 53, which allows reference only when an exceptional condition exists: "A reference to a master shall be the exception and not the rule." Utah R. Civ. P. 53. And cases where reference is appropriate must still be the *exception*, not the rule—otherwise the "exceptional condition" exception might become so large as to swallow up the requirements of the rule. Given these concerns, the "complex enough" standard must be understood in the context of that specific case. As such, we conclude that *Plumb* is limited to its facts involving 17,000 discrete accounts of differing amounts and a

---

2. There are a number of ways to read the "complex enough" verbiage in *Plumb.* One could conclude that our supreme court inadvertently applied the standard applicable to matters to be tried before a jury—whether an action is "complicated"—or one could construe *Plumb* to hold that because the issue before the court was complex enough, the facts and circumstances of that case themselves constituted an exceptional condition. Of course, we assume our supreme court applied the correct aspect of rule 53, and so we construe the decision in *Plumb* as the court applying the exceptional condition standard.

factual review of the attorney fees that were being claimed. *Id.* at 736.

¶16 With this assessment of *Plumb*, we proceed to examine the reasons the district court gave for its reference to the special master and consider whether the district court exceeded its discretion in concluding that an exceptional condition required the reference. While the *Plumb* opinion is silent about the district court's reasoning in making the reference of the special master there, here we have written rulings reflecting the reasoning of the district court.

## II. Application to This Case

¶17 We now turn to the District's argument that the district court's referral to a special master in this case was an abuse of discretion. For the reasons that follow, we conclude that each of the district court's stated reasons for referring the case either weigh against reference to the special master or are legally wrong. Accordingly, we determine that the district court exceeded its discretion in making a reference and we consider each of the district court's stated reasons to justify the appointment in turn.

### A. Judicial Retirement

¶18 The district court judge indicated that his fast-approaching retirement and the fact that he saw "no possible way this case can be tried before" he retired qualified as an exceptional condition under rule 53(b) and warranted the appointment to ensure that some judicial officer would have an understanding of the case and to help a newly appointed district court judge get up to speed:

> A rule 53(e)(1) and (e)(2) report filed by the Special Master along with findings of fact and conclusions of law would allow the new Judge to focus his or her attention on said findings and conclusions; rather

than reviewing the history of the case in preparation
for a trial of which the new judge would have a very
limited history.

¶19    We do not view a judicial retirement as an exceptional
condition under rule 53(b). First, judges retire (or are reassigned)
with regular frequency. Sending cases to a special master because
of a pending retirement would hardly highlight a case as an
exception and not the rule. Second, reference to a special master
will in no way bring a more efficient resolution to the case as
opposed to a newly assigned judge. In fact, a new successor judge
would be in the same position as a special master.[3] Both will have
to get up to speed on this yearslong case, review all the prior
rulings, rule on the pretrial motions, and ultimately make factual
determinations and legal rulings. The special master would do
work identical to any new judge assigned to this case, with two
important exceptions: the special master would charge the parties
for his work[4] and the district court will still need to potentially

---

3. We recognize that in limited circumstances, special masters
may have training or experience that make them uniquely
qualified to oversee a complicated matter or set of proceedings.
That does not appear to be the case here where the special master
designated by the district court is a retired district court judge.

4. Rule 53(a) requires the court to fix the special master's rate of
compensation and assign responsibility for payment. *See* Utah R.
Civ. P. 53(a) ("The compensation to be allowed to a master shall
be fixed by the court, and shall be charged upon such of the
parties . . . as the court may direct."). Here, the district court's
order provides that the special master "be compensated for his
time at the rate of $350 per hour, and $175 per hour for any time
required for traveling." The order further provides that the parties
should bear equally the costs and fees of the special master as well
as "the logistical costs of trial." The District recognizes that

(continued…)

review findings of fact for clear error and address legal issues de novo.

¶20    In reality, as rule 53(e)(2) establishes, the reference to a special master would delay resolution of a case in the procedural posture of this one. While this litigation has been protracted, in many ways it sits on the cusp of actually being tried. Reference to a special master would result in a special master report, which would then be subject to the objections of the parties. If any party objects to the factual findings of the special master, the district court would need to review those findings for clear error. *See* Utah R. Civ. P. 53(e)(2). In fact, even if the parties stipulate to the special master's findings of fact being final, "questions of law arising upon the report shall thereafter be considered" by the court. *Id.* R. 53(e)(4). We acknowledge that in a truly thorny fact-bound case, reference to a special master may be an efficient use of resources to take a laboring oar in the development of a factual record. But that is not the case here because the factual record is already fulsomely developed.

¶21    And the review of legal conclusions—even "esoteric issues related to [the Act's] application to [the District's] determination, assessment and collection of impact fees"—will be another story completely. If the real nub of a case is found in the determination of legal issues, such as the interpretation of the law, reference to a special master will provide little to no net benefit in most cases. After all, unlike factual findings, the special master's legal conclusions are accorded no deference, and the district court's delayed consideration of those identical issues will ultimately have to take place in the same way that they would have occurred

---

reference to a special master is expensive and can increase the cost of the litigation and has the potential to "increase the time and expense necessary to resolve this case," but it does not specifically challenge the amount of compensation to be paid to the special master.

had the reference never been made. Indeed, even in those cases where the parties stipulate that the special master's findings of fact shall be final, a review of questions of law remains. *See id.*

¶22    In sum, a pending judicial retirement and the inability to bring a case to trial before that retirement are not exceptional conditions.

B.    Length of the Case

¶23    The district court ruled that the long pendency of this case qualified as an exceptional condition under rule 53(b) and warranted the appointment of a special master, noting,

> There have been numerous motions and pleadings filed and ruled on throughout this now 9 year old litigation. The case has already been to the Utah Supreme Court, and sent back by that Court for further discovery and evidentiary findings. Recently the case has been expanded to a Rule 23 class action.

¶24    This rationale is equally unpersuasive and problematic. Many cases that come before our district courts have been litigated for a long time; this does not make them exceptional under rule 53(b). It is the role of our district courts to hear and resolve such cases, not to outsource them. After all, rule 53(b) requires that an order of reference "be the exception and not the rule." We hold that the fact that a case has been pending for a long time will most likely not present an exceptional condition. "Simply put, if every case is 'exceptional,' then no case is." *In re Orsak*, No. 01-21-00481-CV, 2022 WL 3649365, at *7 (Tex. App. Aug. 25, 2022).

¶25    Moreover, as the District points out, "there is no reason to believe that the appointment of a special master will expedite this

case." After all, the district court's reference order indicates that any final resolution of the case will be by the new judge after a report and recommendation is received from the special master. The District asserts, and we agree as outlined above, that this means the parties will have to litigate and brief the trial issues twice. As we highlight, referral to a special master here appears to create an additional layer of decision-making before this lengthy litigation can be resolved.

¶26     Finally, the case was far into litigation by the time of the court's referral. Indeed, the case appears to be on the cusp of resolution via trial. Before the motion for reference to a special master was filed, fact and expert discovery had been completed. The district court had set a deadline for dispositive motions and motions to exclude experts. The parties had filed numerous motions, including motions in limine to restrict certain witness testimony. It was only at this point in the litigation that a special master was sought. Under the particular circumstances of this case, the length of the litigation, if anything, counsels against reference to a special master.

¶27     Accordingly, the district court exceeded its discretion in considering this fact as an exceptional condition under the rule.

C.     Court Calendar Congestion

¶28     The district court also concluded that because the court was still dealing with a backlog of cases caused by the COVID-19 pandemic, which had the potential to postpone civil trials, that fact justified the appointment of a special master. We recognize that in a general sense, the COVID-19 pandemic was an extraordinary and (hopefully) nonrecurring event that certainly produced an inordinate backlog of criminal and civil trials in courts throughout the State of Utah. But this concern is in no way particular to this case. Under this logic, the entirety of the district court's civil case load would be ripe for reference to a special

master. Whatever "some exceptional condition," *see* Utah R. Civ. P. 53(b), might ultimately mean, it has to refer to something endemic to the specific action in question. After all, if the "exceptional condition" is a circumstance characteristic of every action on a court's calendar, then that condition is not *exceptional*; instead, it is *normal*. And rule 53(b) does not allow for overarching concerns affecting every case to form the basis for calling in a special master; doing so would make having special masters the rule rather than the exception.

¶29    Further, even while the district court here was considering this motion, we understand that significant resources were being expended to employ senior judges to help alleviate as much of the backlog as possible. The assignment of this case to a senior judge, as opposed to reference to a special master, would bring at least two obvious benefits advising significantly against reference to a special master: first, a senior judge acts as the assigned judge and would not add a layer of review and, second, a senior judge would come at no cost to the parties.[5]

¶30    Accordingly, the need to relieve a backlog of pending cases is not an exceptional condition.

D.      Relaxed Rules of Procedure and Evidence

¶31    In its order granting Property Owners' motion for reference to a special master, the district court noted this as a reason to grant the motion: "Rules of civil procedure and evidence could be relaxed, and hearings could be informal." This is simply legally wrong. And our case law is clear that legal misinterpretation is, by definition, an abuse of discretion. *See Goggin v. Goggin*, 2011 UT 76, ¶ 26, 267 P.3d 885 ("An error of law

---

5. We note the irony that in this particular case, the person ultimately selected to serve as the special master also acted on occasion as a senior judge.

by the district court . . . would be an abuse of discretion."). Rule 53(c) expressly provides that the powers of the special master shall be "subject to the same limitations as provided in the Utah Rules of Evidence." Utah R. Civ. P. 53(c). Accordingly, the reasoning of the district court was based, in part, on a misinterpretation of the applicable law.[6]

E.      Complexity of the Law versus Complexity of the Facts

¶32     For two reasons, it does not appear that this case presents "enough complexity" to warrant reference to a special master. First, on the record before the district court—although class certification had recently occurred—the number of claimants had not yet been identified; this circumstance stands in stark contrast to the 17,000 discrete accounts that formed the basis for the attorney fees review in *Plumb v. State*, 809 P.2d 734, 736 (Utah 1990). Second, and far more importantly, unlike in the facts in *Plumb* where the amount in question depended on a review of thousands of accounts, the claims here are homogenous—the fee at issue is common to all claimants. Therefore, the amounts of the claims do not constitute a complexity.

¶33     Neither the Property Owners in their motion below, nor the district court in its order, identifies any specific "procedural and substantive complexities of the case" that one could characterize as an exceptional condition requiring the appointment of a special master. It is true that Property Owners argued below, and now argue on appeal, that the Act is complex and convoluted, and that resolution of the dispute will require the application of specialized law and the testimony of many experts.

---

6. We acknowledge that when the court later appointed a specific special master, it expressly indicated that the Utah Rules of Evidence would apply. This course correction does not change the reality that when deciding whether to make a reference in the first place, the district court misapprehended the law.

But as we have already explained, the legal complexity, whether of statutory or common law, weighs against reference to a special master, as such issues will ultimately be determined by the district court in any event. On the factual side of the ledger, there is nothing in the record to support a conclusion that this case is any more factually complex than many of the civil cases found on the dockets of our courts. Where the significant complexities are in the legal issues presented, and not particularly in the factual determinations to be made, a case is simply not "complex enough." Simply put, hard legal questions alone cannot equate to an exceptional condition. After all, addressing hard legal questions is the normal course of business of our courts; it is what they were created to do.

¶34   Again, legal complexity and uncomplicated factual determinations counsel against reference to a special master and are not an exceptional condition.

CONCLUSION

¶35   After evaluating the district court's stated reasons for appointing a special master, we find that the reasons either strongly weigh against reference to a special master or are simply wrong under the plain language of the applicable rule. As such, these considerations cannot constitute an exceptional condition, and we conclude that the position taken by the district court was unreasonable. We therefore conclude that the district court exceeded its discretion in making a reference to a special master in this case.

¶36   Reversed.

————