2018 UT App 189

## THE UTAH COURT OF APPEALS

DEGAO XU,
Appellant and Cross-appellee,

*v.*

HONGGUANG ZHAO,
Appellee and Cross-appellant.

Opinion
No. 20160453-CA
Filed October 4, 2018

Fourth District Court, Provo Department
The Honorable Derek P. Pullan
No. 124402420

Steve S. Christensen and Clinton R. Brimhall,
Attorneys for Appellant and Cross-appellee

Brandon C. Bowen, Attorney for Appellee and
Cross-appellant

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES GREGORY K. ORME and DIANA HAGEN concurred.

HARRIS, Judge:

¶1      Degao Xu and Hongguang Zhao divorced in 2015, after twenty-three years of marriage. After a bench trial and post-trial motions, the trial court ultimately ordered Xu to pay $534 per month in alimony. Both parties are dissatisfied with that ruling, and both appeal. We affirm.

BACKGROUND

¶2      The parties were married in China in 1992, but later moved to Utah. During their marriage, Xu obtained a Ph.D. in physics and worked for various employers using that degree. During the last few years before the parties' separation, Zhao

was working as a translator and as a Chinese-language customer service representative, and for a few months worked a second job as a hotel manager. Prior to their separation, the parties resided in a home with a monthly mortgage payment of over $1,800. In 2009, the parties began living separately, and in 2012 Xu filed for divorce.

¶3     After the petition for divorce was filed, Xu submitted financial declarations and supporting documentation, informing Zhao and the court that he earned $6,080 per month, and that he had monthly expenses of $5,987.31, including the $1,800 monthly mortgage payment. For her part, Zhao also completed a financial declaration, but claimed she had no income whatsoever and that her family members helped cover her monthly expenses, which she estimated amounted to $3,383.57, including a $650 housing expense. Zhao provided some documentation for a few of her expenses, but failed to provide any documentation for her claim that she had no income.

¶4     After reviewing Zhao's financial declaration, Xu made discovery requests asking Zhao to produce bank statements and tax returns. Zhao refused to comply with these requests, and Xu asked the trial court to order Zhao to produce the documents, which request the trial court granted. When Zhao failed to comply with the court's order, the court imposed a "discovery sanction" to the effect that Zhao would "not [be] permitted to introduce evidence in opposition to [Xu's] evidence of her income." In accordance with this sanction, the court ultimately barred Zhao from introducing evidence of her income at trial.

¶5     The case eventually proceeded to a bench trial, which was held in 2015. At trial, Xu revealed for the first time that he had recently been fired from his job, and attempted to introduce a new financial declaration indicating that he had no income other than unemployment benefits. However, during closing argument, when the court asked Xu's attorney how it should "deal with [Xu's] income," Xu's attorney responded by stating that the court should impute income to Xu based on his

employment history, asserting that $60,000 to $79,000 would be a reasonable range, and asking the court to "place [Xu's] income at $60,000 per year." Xu also presented evidence of Zhao's income, which, per the discovery sanction, Zhao was not permitted to rebut. Xu presented evidence that, prior to their separation, Zhao had earned $2,150 per month at her primary job and $1,500 per month at a part-time, secondary job. At the conclusion of the trial, the court took the matter under advisement.

¶6     A few weeks later, the court issued findings of fact and conclusions of law. Although Xu had maintained he was unemployed, the court found that Xu had an "extended history of working at jobs ranging in annual pay from $60,000 to $89,000," and "[b]ased on such history" the court imputed income to Xu in the amount of $76,000 per year, or $6,333 per month. The court further determined that Xu's claimed expenses were overstated, in part because the court refused to grant Xu the $1,800 housing allowance on the ground that the parties could not afford to live at the premarital standard of living and because the court ordered that the marital home should be sold. Ultimately, the court determined that Xu's monthly expenses were $3,865.89, and that Xu's imputed income exceeds his expenses by over $2,400 each month.

¶7     The court imputed Zhao's income for her primary job at $2,150 per month, but declined to consider her income from her secondary job, reasoning that her "need should not be based on working a second job any more than [Xu's] ability to pay should be." In assessing Zhao's expenses, the court determined that Zhao's $650 housing expense was acceptable because "there is not enough money for both parties to continue to live at [the marital] standard of living." Ultimately, the court determined that Zhao's monthly expenses were $3,033.57, and that Zhao therefore had a monthly unmet need of $883.57 per month. In the end, the court ordered Xu to pay monthly alimony to Zhao, and the court set that amount at $1,600 per month for four years, and then $1,200 per month for another thirteen years.

¶8 After the trial court issued these findings, Xu filed a motion asking the court to amend its findings of fact and the resulting alimony calculation. In his motion, Xu first pointed out—citing *Bingham v. Bingham*, 872 P.2d 1065, 1068 (Utah Ct. App. 1994) (stating that a "spouse's demonstrated need must . . . constitute the maximum permissible alimony award")—that the ceiling for any alimony award was Zhao's unmet need, which the court had already determined was $883.57, and that any alimony award higher than that was improper. Xu also challenged some of the court's specific determinations regarding the parties' income and expenses. Specifically, Xu argued that Zhao had not done enough to prove her $650 monthly housing expense, which Xu asserted should be "removed" from her list of expenses. Next, Xu argued that the court should have considered Zhao's second job when determining her income. Finally, Xu argued that the court should not have imputed him income based on his work history, because the court had not made a finding that Xu was voluntarily underemployed and had not made any findings that the job market would allow Xu to actually make $76,000 per year.

¶9 In response, Zhao argued that the trial court's alimony determination was adequately supported by its factual findings, and posited that the court would have been within its discretion to determine that her expenses were in fact much higher than it had previously found. For example, Zhao noted that her current standard of living was well below the standard of living she enjoyed during the marriage, and that the court had nonetheless determined that her monthly housing expenses were $650 (the amount she claimed to be paying at the time of the trial) and not $1,800 (the amount the parties had paid on their mortgage on the marital home). Zhao also suggested that the parties' respective standard of living could be "equalized" simply "by allocating them the exact same amount in current expenses," and argued that her monthly expenses should be raised from $3,033.57 to $3,865.80 to match Xu's. Xu filed a reply memorandum responding to these arguments.

¶10 At oral argument on the motion, the court addressed its decision to impute income to Xu at $76,000, and noted that it had made that imputation after it reviewed Xu's work history and found that, while Xu did "have periods where he [was unemployed]," Xu was "always, in the past, able to get back" to full employment relatively quickly. The court also considered whether it should impute income to Zhao on the basis of her secondary job. Here, Xu argued that Zhao should be imputed income based on both of the jobs she held prior to separation because her lack of disclosure crippled the court's ability to "really know how much she was receiving, how much she was spending, [and] what the source of those funds were." Xu acknowledged that while "it's hard to look back [several] years and say that it's relevant today," the evidence of Zhao's income at the time of the separation was "all the [c]ourt had" due to her discovery noncompliance. The court apparently agreed with that argument, noting that it had decided that, "as a sanction," Zhao would not be allowed to contradict evidence Xu produced regarding her income and that this sanction may well justify a decision to impute Zhao income from her second job. Finally, the court allowed both parties to present argument related to whether it correctly imputed their expenses in its initial findings.

¶11 After the hearing, the court issued amended findings of fact and conclusions of law. In these amended findings, the court refused to alter its previous decision to impute to Xu an annual income of $76,000, but did explain its decision in more detail. The court noted that Xu's unemployment was a "temporary" condition and that Xu's "work history demonstrated him to be resourceful and able to acquire new employment in his field." Because of this, and because of Xu's work history "working at jobs ranging in annual pay from $60,000 to $89,000," the court again set Xu's income at $76,000 per year, or $6,333 per month. However, the court did alter its previous conclusion regarding Zhao's secondary job, and this time determined to assign to Zhao income received from a secondary job at a rate of $1,500 per month, which when added to her other income of $2,150 meant that Zhao's imputed monthly income, for the purposes of

the alimony calculation, was $3,650. Finally, the court elected to raise both Xu's and Zhao's housing expenses to $1,800 per month to allow both of them "to enjoy the same standard of living [they] had during the marriage." The court declined to raise any of Zhao's other expenses (such as medical expenses, utility bills, and insurance expenses) to match Xu's expenses. Using these numbers, the court determined that Zhao's monthly expenses were $4,183, leaving her with an unmet monthly need of $533.37. The court determined that Xu could meet that need, and therefore ordered Xu to pay Zhao $534 in monthly alimony.

ISSUES AND STANDARDS OF REVIEW

¶12    Both parties appeal from the court's alimony determination, each raising two issues for our review.

¶13    First, Xu contends that the trial court erred when it determined, in its amended findings, that Zhao's monthly housing expense was $1,800. "The trial court in a divorce action is permitted considerable discretion in adjusting the financial and property interests of the parties, and its actions are entitled to a presumption of validity." *Goggin v. Goggin*, 2013 UT 16, ¶ 26, 299 P.3d 1079 (quotation simplified). Thus, we will not disturb a trial court's determinations unless they are "clearly unjust or a clear abuse of discretion." *Id.* (quotation simplified).

¶14    Second, Xu contends that the trial court erred when it set his income at $76,000 per year. "Trial courts have considerable discretion in determining a spouse's income, and determinations of income will be upheld on appeal absent an abuse of discretion." *Leppert v. Leppert*, 2009 UT App 10, ¶ 7, 200 P.3d 223.

¶15    For her part, Zhao contends that the trial court erred when, relying on the discovery sanction, it included income from a second job in her income calculation. Again, we review a trial court's determination of a spouse's income for abuse of discretion. *Id*.

¶16   Next, Zhao contends that the trial court erred when it did not equalize all of her imputed expenses with Xu's. Trial courts have "considerable discretion" in determining the financial and property interests of parties and we will disturb such determinations only if they are "clearly unjust or a clear abuse of discretion." *Goggin*, 2013 UT 16, ¶ 26 (quotation simplified).

ANALYSIS

A

¶17   Xu first contends that the trial court erred when it determined that, in order to help raise her to the same standard of living the parties enjoyed during the marriage, Zhao's monthly housing expense should be considered to be $1,800. Xu challenges the trial court's determination on both procedural and substantive grounds.

¶18   Xu's procedural complaint is premised on the assumption that the trial court originally assessed Zhao's housing expenses as $650, and then *sua sponte* raised those expenses to $1,800 without giving Xu a chance to be heard on the matter. Xu asserts that no party "ask[ed] the [trial] court to find the housing expense to be that high," and therefore concludes that the trial court acted on its own motion, and contrary to due process, by raising Zhao's housing expenses. Xu notes that while he asked the court to amend its findings of fact, "Zhao did not file a motion or counter motion for additional findings of fact or a new trial in which she requested the Court to raise her housing expense, and Xu did not have an opportunity to oppose any such motion."

¶19   The record, however, does not support Xu's argument. As an initial matter, it was Xu who—in his motion to alter the trial court's findings—directly challenged the $650 housing expense the trial court originally assigned to Zhao, and even implied that the court should "remove" that expense from its calculation entirely. Then, in her response, Zhao raised the argument that

$1,800 might be a better reflection of her monthly housing expenses because it was in keeping with the parties' standard of living prior to separation, and Xu had the opportunity to respond to that argument—and did in fact respond to it—in his reply memorandum. Thus, Xu put the issue of Zhao's housing expense before the court in the first instance, elicited a responsive counter-argument from Zhao that reflected the reasoning which eventually swayed the court, and had the opportunity to respond to that counter-argument in a reply brief. On this record, Xu has failed to persuade us that the trial court raised the issue *sua sponte*, or that Xu had anything less than a full and fair opportunity to address the issue.[1]

¶20　Substantively, Xu asserts that the trial court abused its discretion in setting Zhao's monthly housing expense at $1,800 for three reasons. First, Xu argues that the trial court acted improperly by setting the parties' housing expense based on what they were paying at the time of their separation, but setting many of their other expenses based on their estimates of their post-separation financial needs. Xu argues that, because the court initially calculated his and Zhao's expenses as of the time of separation, the court "opt[ed] to adopt the standard of living existing at the time of trial" as its time frame for assessing the

---

1. To the extent that Xu is asserting that a trial court, when asked to reconsider one of its findings, is bound to either (a) leave the finding undisturbed or (b) change the finding to exactly what the movant requests, we find that argument unconvincing. Once a movant asks a trial court to reconsider a finding or conclusion, the trial court retains discretion to reassess that finding or conclusion in its entirety. *Cf. County Board of Equalization of Salt Lake County v. Tax Comm'n ex rel. Schneiter Enters.*, 899 P.2d 1228, 1230 (Utah 1995) (stating that once a party raises an issue before a reviewing body, the reviewing body is "entitled to rule on precisely the issue [the movant] presented," even if that places the movant in a worse position than he was prior to his motion).

parties' expenses and was therefore foreclosed from including a pre-separation housing expense in its calculation.

¶21   We disagree, because a trial court may, in its discretion, assess some of the parties' expenses as of the time of separation, but nevertheless assess other expenses as of the time of trial. *See* Utah Code Ann. § 30-3-5(8)(e) (LexisNexis 2013) (stating that "[a]s a general rule, the court should look to the standard of living, existing at the time of separation, in determining alimony," but noting that "the court shall consider all relevant facts and equitable principles and may, in the court's discretion, base alimony on the standard of living that existed at the time of trial"); *see also Kidd v. Kidd*, 2014 UT App 26, ¶ 24, 321 P.3d 200 (noting that trial courts should "avoid focusing on actual expenses *alone* when assessing need because the expense level during separation may be necessarily lower than needed to maintain an appropriate standard of living for various reasons," and encouraging courts to consider "the standard of living during the marriage" as well as the expenses during separation (emphasis added) (quotation simplified)).

¶22   Second, Xu asserts that the trial court abused its discretion in setting Zhao's monthly housing expenses at $1,800, because the "the evidence and testimony" on the record "cannot . . . support[]" that figure. Xu argues that Zhao "presented a financial declaration . . . reflecting that the rent on her residence . . . was $650 per month," and that no evidence supported assigning a higher expense to her. Xu acknowledges that $1,800 was the approximate amount of the mortgage payment on the marital home prior to separation. Nonetheless, Xu argues that, to justify assigning that amount as Zhao's monthly housing expense, the court would need to make additional findings "that Zhao needed to spend $1,800 per month . . . to live comfortably or to live at any particular level," and asserts that the court made no such findings.

¶23   We see the matter differently. We first note that the trial court did in fact find that its assigned housing expense reflected

that Zhao "would be required to spend at least two times as much as she now pays in rent" in order "to enjoy the same standard of living she had during the marriage." We construe that statement to be a finding by the trial court that Zhao required the higher housing expense in order to live at a particular level—the level she enjoyed during her marriage. Second, we note that Xu cites to no case law—and we are aware of none—supporting his contention that a court, in determining alimony, must first make a finding that the parties need a specific expense item in order to "live comfortably" or "at any particular level" before determining to assign individual expenses as of the date of separation rather than as of the date of trial. Indeed, while the alimony statute encourages courts to consider the standard of living that "[existed] at the time of separation" in determining alimony, it does not require the court to make specific findings explaining how each imputed expense contributes or fails to contribute to that standard of living. Utah Code Ann. § 30-3-5(8)(e). We conclude that all of the evidence in the record—including, among other things, that the parties' spent $1,800 per month for housing during the marriage—is sufficient to support the trial court's amended finding regarding Zhao's housing expense.

¶24    Finally, Xu asserts that setting Zhao's housing expense at $1,800 was unwarranted because that amount was being spent, prior to separation, to house the entire family, and not just Zhao. We are unpersuaded, for two reasons. First, we note that Xu specifically asked the trial court to set his housing expense at $1,800, even though he was also living alone, because he was living in the same house in which the parties had lived during the marriage. Where one spouse asks the court to set his housing expense to reflect his perceived needs and the court has no evidence that the other spouse has significantly different needs, it is not improper for the court to set the housing expense for both spouses at the amount requested. *Cf. Sauer v. Sauer*, 2017 UT App 114, ¶ 10, 400 P.3d 1204 (noting that, when a husband asked for a higher housing allowance than his wife, and where there was no "claim or evidence that [the husband's] and [the wife's]

reasonable housing needs differed or were wildly different than the housing they enjoyed during their marriage," this court saw "no impropriety in the trial court's decision to impute housing needs to [the wife] in the same amount as [the husband] had claimed was reasonable for him"). Second, we note that it is not an abuse of discretion for a trial court to calculate divorcing spouses' housing expenses by trying to determine what each spouse would need to live in a home of the same size and value as the marital home. *See Farnsworth v. Farnsworth*, 2012 UT App 282, ¶¶ 14–15, 288 P.3d 298 (holding that when a wife was "accustomed to living in a single-family home on property suitable for keeping horses," setting her housing expense at the amount that would be required to place her in a different home of that variety was "the appropriate measure of her housing needs"). Thus, the trial court did not abuse its discretion by setting Zhao's housing expense at the amount Xu had requested be allotted for his own housing, nor did it abuse its discretion by setting Zhao's housing expense at the amount she would theoretically need to continue to live in the type of home she enjoyed during her marriage: a single-family home similar to the marital home in which Xu continued to reside.

¶25   Part of the purpose of alimony is to "get the parties as close as possible to the same standard of living that existed during the marriage," and "to equalize the standards of living of each party." *See Richardson v. Richardson*, 2008 UT 57, ¶ 7, 201 P.3d 942. The trial court's decision to amend its findings to raise Zhao's housing expense from $650 to $1,800 was supported by competent evidence, and furthered these purposes of alimony. Accordingly, we find no abuse of discretion in the trial court's determination.

B

¶26   Xu next contends that the court erred when it set his income at $76,000 per year, despite his testimony during trial that he was unemployed. While Xu initially argued in his brief that the trial court was unjustified in imputing him income

based on his prior work history, he acknowledged at oral argument that he waived any challenge to the court adopting an imputation methodology when his counsel advocated for it at trial.[2] Indeed, at trial, Xu's counsel appropriately invited the court to assign income to Xu based on his employment history, indicated that $60,000 to $79,000 would be a reasonable range of income to consider, and asked the court to set Xu's income at $60,000. In light of this concession, Xu has narrowed his argument to assert that the court was not justified in assigning Xu an income figure of $76,000 (as opposed to $60,000).

¶27    "When determining the appropriate amount of alimony, a trial court must make findings as to the ability of the payor spouse to provide support." *Rayner v. Rayner*, 2013 UT App 269, ¶ 7, 316 P.3d 455 (quotation simplified). When doing so, the court shall base its income determination "upon employment potential and probable earnings as derived from" a long list of factors, including "work history." *Fish v. Fish*, 2010 UT App 292, ¶ 14, 242 P.3d 787; *see also Olson v. Olson*, 704 P.2d 564, 566 (Utah 1985) (noting that where a spouse "has experienced a temporary decrease in income, his historical earnings must be taken into account in determining the amount of alimony to be paid"). In this case, Xu's counsel invited the trial court to impute Xu's income based on his work history. The court did so and, after determining that Xu had an "extended history of working at jobs ranging in annual pay from $60,000 to $89,000," and reasoning that Xu's "work history demonstrated him to be resourceful and able to acquire new employment in his field," assigned Xu an income figure of $76,000, a figure that was well within both the

---

2. We note that even if Xu had not agreed to the use of his work history to impute his income, the trial court would have been within its discretion to forbid Xu from introducing any evidence that he was unemployed, because Xu opted not to disclose that fact until the day of trial. Because Zhao had no reason to believe that Xu was unemployed prior to trial, Zhao had no opportunity to prepare for imputation-of-income arguments prior to trial.

range of income demonstrated by Xu's work history and the somewhat lower range suggested by Xu's counsel at trial.

¶28    On this record, the trial court did not abuse its discretion by imputing Xu annual income of $76,000.

C

¶29    On her cross-appeal, Zhao first contends that the trial court abused its discretion when it altered its initial calculation of her income to also reflect income from a secondary job. Zhao alleges that this was an abuse of discretion because the only "evidence before [the] court was that Zhao could not even find one job let alone a second," and that there was no evidence that she had worked in any job since 2009. Further, Zhao argues that the only evidence regarding any second job was in reference to an eight-month period in which she worked as a hotel manager, and Zhao asserts that drawing long-term conclusions from an eight-month work history is improper. Accordingly, Zhao argues that she should not have been imputed any income, and especially should not have been imputed income from both a primary and secondary job.

¶30    While under ordinary circumstances a court's inclusion of income from a second job under the conditions Zhao describes would give us pause, here Zhao fails to take into account the impact of the discovery sanction the court applied to her with regard to her income information. During discovery, Zhao refused to provide any documentation (bank statements, tax returns) to substantiate her claim that she was not receiving any income, despite being ordered to do so by the court. As a result, the court eventually imposed a discovery sanction, noting that Zhao would not be able to contradict any evidence of her income that Xu was able to introduce. In this case, Xu introduced evidence that, prior to the separation, Zhao had held both a primary and secondary job, and that Zhao was working both of those jobs at the time the parties separated. Based on this evidence, the trial court inferred that Zhao continued to work those (or similar) jobs after the parties' separation, and due to

her discovery violations Zhao was prohibited from contradicting this evidence at trial.

¶31   This case is similar to *Breinholt v. Breinholt*, 905 P.2d 877 (Utah Ct. App. 1995). In that case, a trial court granted a divorce to a husband and wife, and issued findings of fact and conclusions of law concerning alimony. *Id.* at 878–79. The husband was working two jobs at the time of the alimony calculation, but the court declined to consider his income from the second job, reasoning that it should "consider only the income from the equivalent of one . . . full-time job" when calculating its support award. *Id.* at 880 (quotation simplified). On appeal, this court disagreed, holding that "when determining an alimony award, it is appropriate and necessary for a trial court to consider all sources of income that were used by the parties during their marriage to meet their self-defined needs," including income from a second job. *Id*. (quotation simplified). Accordingly, we held that it was an abuse of discretion for the court to decline to consider the husband's income from his second job. *Id*.

¶32   Here, Xu presented evidence that Zhao worked two jobs at the time of separation, and asked the court to infer that Zhao continued to be so employed between the separation and the trial. Because of her discovery misdeeds, Zhao was not permitted to contradict this evidence. While the trial court initially seemed to support Zhao's position, it later reasoned that, "because of the discovery sanction," it was justified in imputing Zhao's income at the last documented level she had received, including both of her jobs. In this unique situation, the trial court did not abuse its discretion when, pursuant to the discovery sanction, it elected to impute Zhao income from both the primary and secondary jobs she held during the last time her income was documented.

D

¶33   Finally, Zhao contends that the trial court abused its discretion when it elected to equalize her housing expense with

Xu's but declined to equalize their other expenses, including utility expenses, medical expenses, and insurance expenses. Zhao argues that these expenses must be equalized to allow her to enjoy "the same standard of living" as Xu.

¶34 We disagree. While Zhao is correct that the "primary aims of alimony" include bringing "the parties as close as possible to the same standard of living that existed during the marriage, or otherwise equalizing the parties' standards of living," *Jensen v. Jensen*, 2008 UT App 392, ¶ 13, 197 P.3d 117 (quotation simplified), we have consistently discouraged trial courts from "simply attempting to equalize the parties' income, rather than going through the traditional needs analysis," when determining alimony, *id*. (quotation simplified). "This is so because, regardless of the payor spouse's ability to pay," alimony should be limited by the recipient spouse's "demonstrated need." *Id*. (quotation simplified). Because different people may pay different amounts to enjoy the same standard of living, simply electing to equalize all of the parties' expenses is inappropriate for an alimony calculation. *Id*.; *see also Willey v. Willey*, 951 P.2d 226, 231–32 (Utah 1997) (upholding a trial court's refusal to impute medical expenses at a value not justified by a payee spouse's demonstrated need, and reversing a court of appeals holding to the contrary).

¶35 In this case, as the trial court observed, Xu's and Zhao's basic expenses differed. As indicated by their financial declarations, they spent different amounts on their medical care, utility bills, insurance, and several other recurring expenses. However, the mere fact that Zhao spent less than Xu on, for example, medical care does not in and of itself prove that Zhao needed to spend more in order to enjoy the same standard of living as Xu did. While large expenses like mortgage payments tend to be borne equally by marital partners, other expenses (like those required for medical care) often vary greatly from person to person. The trial court did not abuse its discretion by refusing to impute Zhao expenses that matched Xu's expenses dollar-for-dollar on every line-item.

CONCLUSION

¶36    The trial court did not abuse its discretion by determining that Zhao's monthly housing expenses were $1,800, imputing income to Xu at $76,000 per year, imputing additional income to Zhao based on her second job, or by declining to impute equal expenses to both Xu and Zhao in every category. We therefore affirm the trial court's alimony calculation.

—————